# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 12-1411


**GWENDA C. ORR, ET UX.**

**VERSUS**

**ACADEMY LOUISIANA CO., L.L.C.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 114,239
HONORABLE RICHARD E. STARLING, JR., CITY COURT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JIMMIE C. PETERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Jimmie C. Peters, and Marc T. Amy, Judges.



**REVERSED AND RENDERED.**




**John O. Charrier**
**7908 Wrenwood Boulevard**
**Baton Rouge, LA 70809**
**(225) 218-8599**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Gwenda C. Orr and Thomas Orr**

**Charles K. Charrier**
**P. O. Box 1007**
**Alexandria, LA 71309**
**(318) 448-3952**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Gwenda C. Orr and Thomas Orr**

**Carl W. Robicheaux**
**2014 West Pinhook Road, Suite 604**
**Lafayette, LA 70508**
**(337) 235-7888**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Academy Louisiana Company, L.L.C.**
    **Zurich American Insurance Company**

**Kimberly G. Anderson**
**3900 North Causeway Boulevard**
**Metairie, Louisiana 70002**
**(504) 219-2002**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Academy Louisiana Company, L.L.C.**
    **Zurich American Insurance Company**

**PETERS, J.**

The defendants, Academy Louisiana Company, L.L.C. (Academy) and its liability insurer, Zurich American Insurance Company (Zurich American), appeal a trial court judgment awarding the plaintiff, Gwenda C. Orr, $50,000.00 in general and special damages for injuries she sustained in an accident which occurred at an Alexandria, Louisiana store owned and operated by Academy. For the following reasons, we reverse the trial court judgment and render judgment in favor of the defendants, dismissing Mrs. Orr's damage claims.

## DISCUSSION OF THE RECORD

Academy owns and operates a chain of sporting goods stores generally identified as the Academy Sports and Outdoor Stores (Academy Sports). At approximately 6:30 p.m. on August 21, 2008, Mrs. Orr and her four-year-old great-granddaughter, Lacey, entered the Academy Sports store in Alexandria, Louisiana, to shop for school shoes for Lacey. While Mrs. Orr was attempting to assist the child in trying on a pair of shoes, she was struck by an adult male riding a small girl's bicycle. The impact caused her to sustain significant personal injuries. The man riding the bicycle offered her assistance, but when she refused his help, he left the scene. Store personnel later located the bicycle after Mrs. Orr reported the accident, but were unable to locate the bicycle rider.

Mrs. Orr filed suit in Alexandria City Court against Academy and Zurich American,[1] seeking both general and special damages. Her husband, Thomas Orr, joined in the litigation, making a claim for loss of consortium damages based on Mrs. Orr's injuries. The defendants answered the petition by denying liability and

---

[1] The original petition incorrectly listed Zurich American Insurance Company as Zurich North America. However, insurance coverage is not an issue in this litigation.

asserting the fault of the unknown bicycle rider and the comparative fault of Mrs. Orr as the cause of the plaintiffs' damages.

Following a May 14, 2012 trial on the merits, the trial court took the matter under advisement. On July 13, 2012, the trial court rendered reasons for judgment, finding that Academy was one hundred percent at fault in causing Mrs. Orr's accident. Finding that Mrs. Orr sustained $17,538.08 in medical expenses and suffered $45,000.00 in general damages, the trial court awarded Mrs. Orr its jurisdictional limit of $50,000.00 in damages.[2] After the trial court executed a November 21, 2012 judgment, the defendants perfected this appeal, asserting three assignments of error:

1. The trial court erred in finding that plaintiff met her burden of proof.

2. The trial court erred in finding Academy was negligent when the incident could not have been reasonably anticipated.

3. The trial court erred in failing to assign fault on the unknown customer/tortfeasor.

**OPINION**

A trial court's findings of fact are reviewed on appeal pursuant to the manifest error—clearly wrong standard of review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). However, an appeal raising a question of law requires the reviewing court to determine whether the trial court was legally correct in its ruling. *Brooks v. Popeye's, Inc.*, 11-1086 (La.App. 3 Cir. 3/14/12), 101 So.3d 59, *writ denied*, 12-1755 (La. 11/2/12), 99 So.3d 676.

The evidence presented is basically not in dispute. Photographs reveal that the bicycles are displayed on a three-tier racking system traversing one side of the

---

[2] Both the reasons for judgment and the judgment are silent concerning Mr. Orr's loss of consortium claim.

bicycle aisle. Each bicycle sits on a slanted stand, comprised of a u-shaped metal bar. The bicycle is held upright by front and rear, inverted L-shaped stands, which cradle the bicycle's tires. The front-stand system, which fits around the front of the tire, locks into place by a collar located on the u-shaped metal bar, which unlocks by sliding backwards. The rear-stand system, comprised of two stands which fit around the front and back of the rear tire, is connected to a movable plate, located inside the channel of the u-shaped metal bar.

According to Mr. Randall C. Hoben, the Alexandria store director, one must unlock the front stand by sliding the collar backwards and then lowering the stand in order to remove the bicycle from the rack. This action requires that the bicycle be held in place to prevent the rear-stand system from sliding forward as the front stand is lowered. Once the front stand is unlocked, the bicycle, whose rear tire is still cradled in the rear stand, is pulled forward, lifted out of the rear stand, and then lowered to the floor. Mr. Hoben testified that while it is somewhat difficult for a bicycle to be removed from the rack, Academy's policy is to encourage its customers to handle all of the merchandise except for guns and high-end fishing reels. The only restriction placed on that policy is that customers are forbidden from climbing store ladders. He testified that the bicycle display is located in the team-sports department and that the racks holding the bicycles are designed to keep the bicycles upright and stable and to prevent them from falling or rolling forward onto customers. He also testified that the display allows for customers or sales personnel to remove bicycles and further inspect them on the aisle floor. This allows a potential purchaser to make a decision concerning which bicycle to purchase and to transport it to the front of the store and complete the purchase at the check-out area.

The shoe department, on the other hand, is located in the rear of the store in the opposite direction one might expect a customer to transport a bicycle. Mr. Hoben testified that the bicycles are separated from the shoe department by an aisle of bicycle and skateboard accessories. A customer going from the bicycle section to the shoe department does so by one of two ways. He can either exit the bicycle aisle by moving toward the center of the store and turning toward the back of the store via the major store walkway,[3] or he can exit the bicycle aisle in the other direction and proceed toward the rear of the store along the exterior wall of the store.

Both Mr. Hoben, who had been employed by Academy for fifteen years, and Mary Beth Thomas, the manager on duty at the time of Mrs. Orr's accident, testified that they had never been involved in the investigation of an accident similar to this. In fact, even Mrs. Orr suggested that "[n]ever in a million years" would she have expected such an accident to occur in Academy Sports. Mr. Hoben was more specific when he testified that in his fifteen years with Academy, he had never heard of a customer being injured by a bicycle-riding customer. Mrs. Orr also testified that when she passed the bicycle aisle on her way to the shoe department just moments before the accident, she did not observe anyone riding a bicycle in that aisle. Additionally, she asserted that there was more than enough room in the aisle where the accident occurred for the man to pass her on the bicycle.

---

[3] This walkway, which is referred to in the record as the racetrack, circles the store in order to give each customer direct access to every department from the same aisle.

### *Assignments of Error Numbers One and Two*

In its reasons for judgment, the trial court concluded that this was "a simple negligence case." In their first assignment of error, the defendants assert that the trial court erred in not applying the provisions of La.R.S. 9:2800.6 to Mrs. Orr's burden of proof, and this failure resulted in Mrs. Orr not meeting her burden of proof under that statute. In their second assignment of error, the defendants assert that the trial court erred in finding them negligent when the incident itself could not have been reasonably anticipated. We will consider these assignments of error together.

With regard to Academy's liability under general negligence concepts, the trial court stated the following:

> Academy is basically a self service sporting goods store. It does have items other than sporting goods such as clothes and shoes, but the sporting goods are in most cases available for the customer to remove from the racks and shelves. Academy encourages the customer to take items from the racks and shelves so that they can feel, see and somewhat experiment with the use of the equipment. It is foreseeable that a person would remove the bicycle from the rack in an effort to examine before purchasing it. In fact, it would seem to the court, in most cases a person would have to remove the bicycle from the rack to determine if it is the right size for the purchaser's desired use. While it may not be advisable, the court certainly believes that it is foreseeable that an individual would get on a bicycle and somewhat maneuver it with his or her feet to determine if it is functional for the purchaser. A bicycle is built to be mobile. The court believes that all parties agree, if; this item was secured so that it could not be removed from the rack, the accident does not occur. The photographs introduced into evidence by the defendants make it clear that securing the bicycles, on the rack, whereby they can not [sic] be moved without the help of a store employee would be easy and inexpensive.
>
> Accordingly, the court is of the opinion that the bicycles should be secured in such a way that the customer can not [sic] test it without an employee assisting him or her. The court also believes that at the very least a sign should be present advising customers not the [sic] ride a bicycle in the store and that a sales associate should be summoned prior to removing a bicycle from the rack. Accordingly,

the court finds Academy 100% at fault for the injuries to Ms. Gwenda Orr.

Generally, negligence claims in Louisiana are evaluated under a duty-risk analysis. This involves a five-step process which requires that the party, alleging another's fault, establish the following:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability.

*Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095, p. 7 (La. 3/10/06), 923 So.2d 627, 633 (citations omitted).

In certain fact-specific situations, the Louisiana Legislature has codified the duty and breach-of-duty requirements of the duty-risk analysis as it applies to merchants. Louisiana Revised Statutes 9:2800.6 bears the title "**Burden of proof in claims against merchants**" and provides as follows:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

6

(3)   The merchant failed to exercise reasonable care.   In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C.  Definitions:

(1)  "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.   The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2)  "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.   For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D.  Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 668, 2317, 2322, or 2695.

The defendants argue in the matter before us that the trial court erred in considering this matter as a "simple negligence case" and in not applying La.R.S. 9:2800.6 to the facts at hand.  We disagree.  While La.R.S. 9:2800.6(A), when read alone, might cause one to conclude that the statute is applicable to all negligence cases involving a merchant, when read in conjunction with the remainder of the statute, it is clear that the keeping of "aisles, passageways, and floors in a reasonable safe condition" requirement of La.R.S. 9:2800.6(A) relates to the slip and fall liability set forth in La.R.S. 9:2800.6(B).

Our conclusion that La.R.S. 9:2800.6 is not all inclusive with relation to merchant negligence liability, is supported by the decision in *Manning v. Dillard Department Stores, Inc.*, 99-1179, p. 3 (La. 12/10/99), 753 So.2d 163, 165, wherein the supreme court stated the following with regard to merchant liability:

> Louisiana courts have adopted a duty-risk analysis to determine whether a party is liable for negligence under the facts of a particular case. *Mart v. Hill*, 505 So.2d 1120 (La.1987). Generally, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. *St. Hill v. Tabor*, 542 So.2d 499 (La.1989); *Harris v. Pizza Hut of La., Inc.*, 455 So.2d 1364 (La.1984).

The *Manning* decision is similar to the factual matter before us in that it involved a customer injured by the actions of a third party, a credit-card thief fleeing from store-security personnel. In rendering the decision that the store was not liable for the customer's damages, the supreme court applied the basic duty-risk analysis without mention of the particulars of La.R.S. 9:2800.6.

The fact that we do not find the trial court erred in applying general negligence concepts to this case does not end our inquiry. We must now review the trial court's finding of negligence on the part of Academy by applying the duty-risk analysis to determine whether the trial court erred in finding Academy negligent. In doing so, we first note that the supreme court has clearly asserted the duty owed by Academy toward Mrs. Orr. Academy is required to exercise "reasonable care for the safety of persons on [its] premises and the duty of not exposing such persons to unreasonable risks of injury or harm." *Manning*, 753 So.2d at 165.

We find, however, that the trial court erred in concluding that Academy breached this duty. As pointed out in *Manning*, "a business establishment is not the insurer of its patrons' safety." *Id.* (citation omitted). We agree with the trial court that it is foreseeable (and in fact encouraged) for a customer to remove a bicycle from the rack to see if it is the proper size, and it is foreseeable that the customer might ride the bicycle a short distance in furtherance of reaching that

8

determination. However, after reviewing the photographs of the bicycle racks and aisle, we do not find it foreseeable that a customer would ride a bicycle beyond this aisle to any other place in the store during this process.

While granting its customers access to the bicycles, Academy has devised a display that would make it difficult for most customers to determine how to remove a bicycle from the rack, prompting a need for a customer service representative. All sporting goods stores are stocked with merchandise which, if used improperly, could cause damage to other customers. To conclude that a customer's access to an unlocked bicycle rack constitutes an unreasonable risk of harm would easily extrapolate to a requirement that the other basic sporting-goods merchandise such as bats, golf clubs, and balls would require similar treatment. We do not find that Academy's duty extends this far.

Considering our findings regarding the foreseeability of a customer riding a bicycle anywhere beyond the bicycle aisle, we find that the trial court erred in finding that Academy breached the duty it owed Mrs. Orr of exercising reasonable care for the safety of its customers and of not exposing those customers to unreasonable risks of injury or harm. Both Mr. Hoben and Mrs. Thomas testified that during their tenure with Academy, they have never heard of a customer being injured by a bicycle-riding customer. Moreover, even Mrs. Orr stated that "never in a million years" would she expect this sort of incident to occur in Academy.

Accordingly, we reverse the trial court judgment in favor of Mrs. Orr, and we render judgment in favor of Academy Louisiana Company, L.L.C. and Zurich American Insurance Company, finding they are not liable to Mrs. Orr as a result of her accident.

9

Based on this finding, we need not address Academy's remaining assignment of error.

## DISPOSITION

For the foregoing reasons, we reverse the judgment of the trial court and render judgment in favor of Academy Louisiana Company, L.L.C. and Zurich American Insurance Company, dismissing the claims of Gwenda C. Orr against them. We assess the costs of this appeal to Gwenda C. Orr.

**REVERSED AND RENDERED.**