# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 13-1112

PEGGY EDWARDS

VERSUS

PLANT WORKS, ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NO. 13-02553 (4)
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

**JIMMIE C. PETERS
JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Jimmie C. Peters, Judges.

**AFFIRMED.**

**Jeffrey J. Warrens
Amanda H. Carmon
Johnson, Rahman, & Thomas
P. O. Box 98001
Baton Rouge, LA 70898-8001
(225) 231-0934
COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Plant Works**
    **Louisiana Workers' Compensation Corporation**

**Jennifer B. Valois**
**Barber Law Firm**
**111 Mercury Street**
**Lafayette, LA 70503**
**(337) 232-9893**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Peggy Edwards**

**PETERS, J.**

The defendants, Plant Works and Louisiana Workers' Compensation Corporation (LWCC), appeal from the judgment of the workers' compensation judge (WCJ) ordering an independent medical examination of the plaintiff, Peggy Edwards. For the following reasons, we affirm the WCJ judgment ordering the independent medical examination.

## DISCUSSION OF THE RECORD

In 2001, Ms. Edwards had undergone a corpectomy at C6, with anterior fixation and fusion at C5 through C7. Sometime thereafter, she became employed by Plant Works, a Scott, Louisiana business, as a plant-care technician. On November 8, 2005, she sustained work-related injuries when the company vehicle she was driving was hit by another vehicle. Following the accident, she was treated for neck and low-back pain by numerous doctors, with treatments including physical therapy and psychological evaluations.

On November 26, 2013, she was seen by Dr. Jason Cormier, a Lafayette, Louisiana neurosurgeon, at the request of her doctor, Dr. Joseph Bozzelle, Jr., a Lafayette, Louisiana physician specializing in pain medicine. After updating Ms. Edwards' lumbar and cervical MRIs, Dr. Cormier noted disc herniations at L3-4 and L5-S1, for which he recommended conservative treatment. However, in regards to her cervical spine, Dr. Cormier's January 31, 2013 notes reflected that:

> [S]he has evidence of cervical spondylosis and post-operative changes. At C3-4 there is a small protruding disc fragment measuring 3 to 4 mm. At C4-5 there is moderate anterior spurring and a central broad based disc bulge. At C5-6 postoperative change indicates evidence of an anterior cervical fusion and there is a great deal of artifact within this region. At C6-7 there is evidence of attempted fusion. Some parts appear to be solid. However, there appears to be lysis of the bone surrounding the compression plates, screws, and stabilization device. There is concern of hardware subsidence in addition to

evidence of spinal canal stenosis due to the loss of curvature of lordotic posture of her cervical spine. I do believe she will require both anterior and posterior surgery for her neck to stabilize this circumstance.

On February 26, 2013, Dr. Cormier requested approval from LWCC to perform a C3-T2 posterior fixation and fusion on Ms. Edwards. Via utilization review, LWCC denied Dr. Cormier's request for the following reasons:

1.  There is no evidence of any neuropathy that needs to be addressed by repeat spinal surgery. What physical examination information is provided is normal.

2.  The imaging studies indicate that the previous 3 level fusion is solid at all 3 levels, so repeat surgery is not necessary or appropriate.

3.  The proposed surgery would freeze the patient's entire cervical spine. This would decrease not increase function.

4.  Review of our records indicate that the patient has had various treatment with multiple physicians. There is no indication that the patient has had active functional rehabilitation, or any conservative treatment in the last 6 months. The Guidelines state that "Mere passage of time with poorly guided treatment is not considered an active treatment program." (Citations omitted.)

5.  The patient also complains of back pain. This is likely to be made worse by freezing the entire cervical spine. All rotation of the head, neck or body would have to be done at the lumbar spine.

6.  The guidelines state that "The effectiveness of three-level cervical fusion for non-radicular pain has not been established." (Citation omitted.)

7.  The Guidelines state that surgery for non-radicular pain is only indicated if the pathology is limited to 2 levels. (Citation omitted).

8.  There is no evidence that the patient has had a complete psychological evaluation including testing as required by the Guidelines before this surgery is considered.

In response to this denial, Dr. Cormier resubmitted his request with additional documentation on February 26, 2013. On March 19, 2013, LWCC again denied approval for the surgery, stating, "There is no evidence that shows any substantive change in the treatment or the patient's condition that warrants reconsideration of the previous denial." Dr. Cormier appealed this denial on March 22, 2013, by filing a Form 1009 Disputed Claim for Medical Treatment with the Office of Workers' Compensation, Medical Services Director. On March 25, 2013, counsel for Ms. Edwards supplemented Dr. Cormier's disputed claim with a copy of a psychological evaluation by Dr. Michael Berard, a Lafayette, Louisiana Clinical/Medical Psychologist, based on his October 5 and December 17, 2012 evaluations of Ms. Edwards. The Medical Director denied Dr. Cormier's disputed claim on April 2, 2013, for the following reasons:

> All records submitted were reviewed. (**56 pages**). The documentation **does not** support the approval of the requested services per the Louisiana Medical Treatment Guidelines (MTG) noted below.
>
> The clinical records note no findings for myelopathy, progressive neurologic deficit, normal motor strength, no radiculopathy on examination. Psychological evaluation from 2008 were submitted, which did not note patient's response to surgery. Imaging findings were reviewed in the provider's notes, but no imaging reports were submitted. An electro-diagnostic report was for the lower extremities, and was normal.
>
> The clinical records submitted do not meet the indications for surgery. Fusion level is for 6 segments; specific pain generators are not identified; imaging reports were not submitted; psychosocial evaluation is over 5 years old and does not address potential response to surgery.

(Emphasis in original.)

On April 12, 2013, Ms. Edwards filed a disputed claim for compensation appealing the Medical Director's denial of Dr. Cormier's request for surgery. In

3

her disputed claim, she pointed to the Medical Director's statement that "psychosocial evaluation is over 5 years old and does not address potential response to surgery" as evidence that the Medical Director failed to even consider Dr. Berard's report, which is certainly less than five years old and specifically addresses responses to surgery at page fourteen of the evaluation. Ms. Edwards asserted to the WCJ that based on his failure to consider this evidence, the Medical Director applied the wrong standard and failed to comment on the underlying issue or treatment.

During the May 16, 2013 hearing on the motion, Ms. Edwards' counsel stated, and Plant Works' counsel agreed, that Dr. Cormier has resubmitted his request twice subsequent to him filing the disputed claim for medical treatment, and that LWCC has rejected both requests. Both parties further agreed that Ms. Edwards has submitted all medical records, including records for a recent hospitalization, to LWCC's medical director for consideration. Based on the argument presented, the WCJ orally denied Ms. Edwards' appeal of the Medical Director's denial of Dr. Cormier's disputed claim for medical treatment. However, the WCJ further ordered, based on the new medical records, that Ms. Edwards submit to an independent medical examination (IME) by a neurosurgeon for evaluation purposes regarding the requested surgery. The WCJ executed a final judgment to this effect on June 28, 2013, and, thereafter, Plant Works and LWCC perfected the appeal now before us.

**OPINION**

On appeal, Plant Works and LWCC (referred to collectively as Plant Works) argue that the WCJ legally erred in ordering the IME because "LSA-R.S. 23:1203.1 places authority for medical necessity determinations with the Office of

4

Workers' Compensation Medical Director rather than with an Independent Medical Examiner." This assignment of error raises a question of law. Therefore, we will review this issue in order to determine whether the WCJ was legally correct in her ruling. *Orr v. Acad. La. Co., L.L.C.*, 12-1411 (La.App. 3 Cir. 5/1/13), __ So.3d __.

Based on this court's recent *en banc* opinion in *Romero v. Garan's, Inc.*, 13-482 (La.App. 3 Cir. 12/26/13), __ So.3d __, which held that the provisions of La.R.S. 23:1203.1 were substantive in nature and, thus, applied prospectively only, we find that the WCJ was bound to follow the law in effect on November 8, 2005, the date of Ms. Edwards' accident, in determining workers' compensation matters pertaining to her. In *Romero*, we specifically overruled our previous opinion in *Cook v. Family Care Services, Inc.*, 13-108 (La.App. 3 Cir. 8/28/13), 121 So.3d 1274, which opinion Plant Works relies on in support of its argument.

Furthermore, as pointed out by Ms. Edwards, the WCJ has two avenues for appointing an IME: La.R.S. 23:1123 and La.R.S. 23:1124.1. Louisiana Revised Statutes 23:1123, as it read in 2005, provided:

> If any dispute arises as to the condition of the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.

Louisiana Revised Statutes 23:1124.1 further provides:

> Neither the claimant nor the respondent in hearing before the workers' compensation judge shall be permitted to introduce the testimony of more than two physicians where the evidence of any additional physician would be cumulative testimony. However, the workers' compensation judge, on his own motion, may order that any claimant appearing before it be examined by other physicians.

5

Based on these two provisions, we find that the WCJ acted within her discretion in appointing an IME to examine Ms. Edwards with regard to the necessity for further surgery.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the workers' compensation judge in ordering that Peggy Edwards submit to an independent medical examination. We assess all costs of this appeal to Plant Works and Louisiana Workers' Compensation Corporation.

**AFFIRMED.**