# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCW 13-108

**CALLIE ANN COOK**

**VERSUS**

**FAMILY CARE SERVICES, INC.**

\*\*\*\*\*\*\*\*\*\*

ON APPLICATION FOR WRITS FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO. 12-07096
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and John E. Conery, Judges.

**WRIT DENIED.**

**H. Douglas Hunter**
**Guglielmo, Lopez, Tuttle, Hunter & Jarrell**
**Post Office Drawer 1329**
**Opelousas, Louisiana 70571-1329**
**(337) 948-8201**
**Counsel for Defendant-Respondent:**
 **Family Care Services, Inc.**

**Dorwan G. Vizzier**
**Broussard, Halcomb & Vizzier**
**Post Office Box 1311**
**Alexandria, Louisiana  71309-1311**
**(318) 487-4589**
**Counsel for Plaintiff-Applicant:**
      **Callie Ann Cook**

**Stephen Winston Glusman**
**Glusman, Broyles & Glusman**
**Post Office Box 2711**
**Baton Rouge, Louisiana  70821-2711**
**(225) 387-5551**
**Counsel for:**
      **LUBA Casualty Insurance Company, Inc.**

**Denis Paul Juge**
**Juge, Napolitano, Guilbeau, Ruli & Frieman**
**3320 West Esplanade Avenue, North**
**Metairie, Louisiana  70002**
**(504) 831-7270**
**Counsel for:**
      **LUBA Casualty Insurance Company, Inc.**

**KEATY, Judge.**

Plaintiff-relator, Callie Ann Cook (Cook), seeks supervisory writs from a judgment rendered by the workers' compensation judge (WCJ) finding that La.R.S. 23:1203.1 applied retroactively to her appeal of a decision from the medical director of the Office of Workers' Compensation (OWC), denying her request for approval of medical treatment.

## FACTS AND PROCEDURAL HISTORY

Cook sustained an on-the-job injury on May 13, 2006, while employed at Family Care Services, Inc. (FCS), defendant-respondent herein. As a result of her injury, Cook underwent low back surgery in 2007 and continues under the care of her orthopedist, Dr. Austin W. Gleason. According to Dr. Gleason's records, Cook underwent a lumbar CT scan on November 2, 2011. In April of 2012, Dr. Gleason recommended a repeat CT scan of the lumbar spine, which was refused by FCS. In August of 2012, Dr. Gleason again recommended a repeat lumbar CT scan to check for spinal stenosis.[1] On September 4, 2012, Dr. Gleason submitted a 1010 Form, requesting authorization for a lumbar CT scan. The request was denied by utilization review on September 10, 2012, upon a finding that the procedure was not medically necessary under the medical treatment guidelines.

On September 18, 2012, Cook filed a Form 1009, seeking an order from the medical director of the OWC approving the requested CT scan. On October 1, 2012, the medical director denied Cook's request. Cook then filed a 1008 Disputed Claim for Compensation on October 15, 2012, seeking reversal of the medical director's decision and an award of penalties and attorney fees, alleging

---

[1] In his August 21, 2012 Progress Report, Dr. Gleason noted that because Cook had a pacemaker, she could not undergo an MRI.

that the refusal to approve the requested treatment was arbitrary and capricious. Cook argued that because her accident predated passage of La.R.S. 23:1203.1 which requires requests for medical treatment to be submitted to the OWC for approval by a medical director, that law was not applicable to her claim.

The WCJ issued a rule to show cause with respect to the review of the applicability of La.R.S. 23:1203.1 to Cook's claim. In response to the rule, Cook filed a memorandum, objecting to the application of La.R.S. 23:1203.1 to her claim for medical treatment arising from her 2006 accident. On December 21, 2012, the WCJ ruled that La.R.S. 23:1203.1 applied retroactively to Cook's 2006 accident. Cook timely sought supervisory review of that decision.

By letter dated July 11, 2013, this court received a letter from Cook's counsel of record advising that FCS had approved Cook's request for a CT scan of the lumbar spine, thus making the issue of an order for approval for the testing moot. Nevertheless, Cook still wished to pursue this writ as her 1008 also presented the question of whether she is entitled to penalties and attorney fees for FCS's initial refusal to authorize the requested testing which required her to file formal claims with the OWC. According to the letter, whether she is entitled to penalties and attorney fees is dependent upon the correctness of the WCJ's ruling.

**SUPERVISORY RELIEF**

> The exercise of supervisory jurisdiction by appellate courts is within their plenary power. La. Const. art. 5, § 10. Appellate courts generally will not exercise such jurisdiction unless an error in the trial court's ruling will cause the petitioner irreparable injury or an ordinary appeal does not afford an adequate remedy. *Stevens v. Patterson Menhaden Corp.*, 191 So.2d 692 (La.App. 1 Cir.1966), *writ denied*, 250 La. 5, 193 So.2d 524 (1967).

*Borrel's, Inc. v. City of Marksville*, 05-48, p. 1 (La.App. 3 Cir. 6/1/05), 904 So.2d 938, 939.

## STANDARD OF REVIEW

Statutory interpretation is a question of law. We review questions of law de novo without deference to the lower court's decision. *Louisiana Municipal Assoc. v. State*, 04-227 (La.1/19/05), 893 So.2d 809. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written," without further interpretation into the legislative intent. *Id.* at 837. Further, each word in a statute is presumed to be effective and serve a useful purpose; therefore, we will give effect to all parts of a statute, understood as a whole.

*Mouton v. Lafayette Physical Rehab. Hosp.*, 13-103, pp. 2-3 (La.App. 3 Cir. 6/5/13), 114 So.3d 626, 628.

## DISCUSSION

At the hearing to determine whether La.R.S. 23:1203.1 applied retroactively to this case, the WCJ stated:[2]

This is [sic] the first time I've heard discussion about retroactive prospective application, but this is the first time I've ever had the matter brought before this Court. And it's sort of like arguing that, "Well, an injured worker is entitled to reasonable and necessary medical care,' which is what the Statute stated prior to the adoption of the medical treatment guidelines, and it's kind of like arguing, "Well, the medical treatment guidelines are not reasonable and necessary medical care." That's sort of oxymoronic. And 23:1203.1, Section I says that, "After promulgation of the medical treatment schedule throughout this chapter and not withstanding any provision of law to the contrary, medical care, services and treatment due pursuant to Revised Statute 23:1203 et sec reaping the same medical care by the employer to the employee shall mean care, services and treatment in accordance with the medical treatment schedule." But it's my current impression that the phraseology "Notwithstanding any provision of the law to the contrary" indicates that the intent of the legislature in the adoption of this statute to have this law apply to all claims, no matter the date of injury, after the adoption of the medical treatment guidelines, and that's how I'd rule today.

---

[2] We note that the WCJ made several errors when quoting La.R.S. 23:1203.1(I) at the hearing. The correct wording of the statute follows:

After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule.

Cook argues that the WCJ committed an error of law in interpreting La.R.S. 23:1203.1 to apply retroactively to claims arising out of on-the-job injuries occurring prior to the enactment of La.R.S. 23:1203.1 by 2009 La. Acts No. 254. At the time of her accident in 2006, La.R.S. 23:1203(A) provided, in pertinent part, "[i]n every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment and any non-medical treatment recognized by the laws of this state as legal . . . ." Cook maintains that the definition of the medical care and treatment required by the employer was changed with the enactment of La.R.S. 23:1203.1, specifically Section I, which now requires a medical treatment schedule.[3] She further contends that application of La.R.S. 23:1203.1 reduces the medical benefits for her on-the-job accident that predated the enactment.

Cook argues that there is no legislative expression of intent to apply La.R.S. 23:1203.1 retroactively. In the absence of such intent, Cook maintains that the court must classify La.R.S. 23:1203.1 as substantive, procedural, or interpretive, citing *Bourgeois v. A.P. Green Industries, Inc.*, 00-1528 (La. 4/3/01), 783 So.2d 1251. Cook adds that pursuant to La.R.S. 1:2, the retroactivity of a statute must be "expressly so stated." Because La.R.S. 23:1203.1 does not indicate that it should be applied to accidents that occurred prior to its 2009 enactment, it should be applied prospectively, only to accidents that occurred after its enactment. In support of her argument, Cook refers this court to *Stelly v. Overhead Door Co. of Baton Rouge*, 94-569, pp. 7-8 (La. 12/8/94), 646 So.2d 905, 911-12, wherein the supreme court stated:

---

[3] The statute was later amended by 2010 La. Acts 619 and 2012 La. Acts 573, neither of which affected Section I.

A substantive law creates, confers or destroys rights, causes of action or legal duties. A procedural law prescribes methods for enforcing substantive laws, and relates to the form of the proceeding or the operation of the laws. An interpretive law merely establishes the meaning that the existing law had from the time of its enactment.

In *Stelly*,[4] the court considered these precepts to 1989 La. Acts 454 and determined that the legislation was not interpretive or procedural, as it did not establish the meaning of La.R.S. 23:1032, nor did it prescribe methods for enforcing the substantive rights and obligations already dictated in the statute. Instead, the court found the enactment to be substantive as it destroyed rights or causes of actions by barring any tort action raised under a theory of dual capacity. Furthermore, the court held that "no law can be applied retroactively so as to divest a party of a vested right." *Id*. at 912 (citing *Cole v. Celotex Corp.*, 599 So.2d 1058 (La.1992)).

Likewise, Cook contends herein that La.R.S. 23:1203.1 is a substantive change because it changes the definition of medical care and services to which she is entitled and destroys her rights by redefining and limiting such medical care. Cook also maintains that La.R.S. 23:1203.1 destroys the legal duties of FCS to provide medical care. Lastly, Cook maintains that the law in effect at the time of her injury is the applicable law. In support of her claim, Cook cites a number of cases, none of which involve the statute herein.

In opposition, FCS asserts that the legislature expressed its intent in Section L that once the guidelines were established, injured employees would receive prompt medical care. Section L reads, "It is the intent of the legislature that, with the establishment and enforcement of the medical treatment schedule, medical and

---

[4] The statute at issue in *Stelly* was La.R.S. 23:1032, entitled "Exclusiveness of rights and remedies; employer's liability to prosecution under other laws."

surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees." FCS stresses that the purpose of enacting the guidelines was to create a streamlined system for injured workers to navigate and to increase efficiency in the system. As such, FCS maintains that the wording of Section L is an expression of a retroactive and prospective application of the new law.

Additionally, FCS refers to the language of Section I and urges that the legislature expressed its intent that the definition of "medical care, services, and treatment due" was to change from being determined by the former system, which it describes as "cumbersome," to that defined by the medical treatment schedule, and that such change was to occur "[a]fter the promulgation of the medical treatment schedule."

Lastly, FCS maintains that the language in Section J regarding disputes after January 1, 2011, demonstrates the legislature's intent for any dispute after January 1, 2011, to be subject to the medical guidelines. Section J reads:

> After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers' compensation administration medical director on a form promulgated by the director. The medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.

6

FCS urges that the legislature did not base this date upon the date of the accident but rather the date of the dispute. Because Cook's dispute arose after January 1, 2011, FCS concludes that La.R.S. 23:1203.1 applies to the dispute.

If this court finds that the legislature did not express its intent, FCS argues in the alternative that La.R.S. 23:1203.1 is procedural, not substantive, because Cook's right to reasonable medical treatment has not changed, only the procedure. As such, FCS maintains that La.R.S. 23:1203.1 should be applied retroactively and prospectively. Further, FCS urges that the new procedure in no way changes the rights of the employee to reasonable medical care.

An *amicus curiae* brief was filed in this matter on behalf of LUBA Casualty Insurance Company, Louisiana Workers' Compensation Corporation, Louisiana Home Builders Association SIF, LAC Self Insured Fund, Louisiana Restaurant Association Self Insurers Fund, Stonetrust Commercial Insurance Company, Louisiana Healthcare Self Insurance Fund, and Louisiana Auto Dealers Self Insurers' Fund on the issue herein, i.e., whether the medical treatment schedule is to be applied to all treatment of injured workers requested by medical providers after July 13, 2011. The *amici curiae* maintain that no substantive rights of an injured worker are impaired by the medical treatment guidelines nor is the right to reasonable and necessary medical treatment diminished.

To date, no courts have interpreted the retroactive or prospective application of La.R.S. 23:1203.1. Considering the language of La.R.S. 23:1203.1 and the arguments of the parties, we conclude that the retroactive application of La.R.S. 23:1203.1 to work-place accidents that arose prior to its effective date does not remove any substantive right to medical care, and thus, is procedural in nature. Further, Cook has not shown how she has lost any right to medical care as a result

of the retroactive application of La.R.S. 23:1203.1. Lastly, we find that the language of the statute evidences the legislature's intent for La.R.S. 23:1203.1 to apply retroactively. Accordingly, the WCJ correctly found La.R.S. 23:1203.1 applicable to Cook's claim for medical treatment for her on-the-job injury sustained prior to the effective date of La.R.S. 23:1203.1. The writ is denied.

**WRIT DENIED**.