# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-482

DENA ROMERO

VERSUS

GARAN'S, INC.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT  4
PARISH OF LAFAYETTE, NO. 02-02417
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

**********

## JIMMIE C. PETERS
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John D. Saunders, Jimmie C. Peters, Marc T. Amy, Elizabeth A. Pickett, Billy H. Ezell, J. David Painter, James T. Genovese, Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.

**AFFIRMED IN PART; REVERSED IN PART;
RENDERED IN PART; AND DISMISSED IN PART.**

Amy, J., dissents in part and assigns written reasons.

Pickett, J., dissents in part for the reasons assigned by Judge Keaty.  In all other respects, she concurs with the opinion.

Gremillion, J., concurs in part and dissents in part for the reasons assigned by Judge Amy.

Keaty, J., dissents in part and assigns written reasons.

Conery, J., concurs in part and dissents in part and assigns written reasons.

**Michael B. Miller**
**P. O. Drawer 1630**
**Crowley, LA 70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
  **Dena Romero**

**H. Douglas Hunter**
**Guglielmo, Lopez, Tuttle, Hunter & Jarrell, L.L.P.**
**P. O. Drawer 1329**
**Opelousas, LA 70571-1329**
**(337) 948-8201**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
  **Garan's, Inc.**
  **Liberty Mutual Insurance Company**

**PETERS, J.**

The plaintiff, Dena Romero, appeals from the judgment of the workers' compensation judge (WCJ) awarding her penalties and attorney fees for her employer's failure to timely reimburse her mileage expenses, but denying her penalties and attorney fees for its failure to authorize medical treatment. For the following reasons, we reverse in part, render in part, affirm in part, and dismiss in part.

## DISCUSSION OF THE RECORD

Ms. Romero sustained a work-related injury on June 3, 2000, while employed by Garan's, Inc., at its Kaplan, Louisiana business location. On May 2, 2005, the WCJ awarded her temporary total disability (TTD) benefits; all reasonable and necessary medical treatment, including back surgery; and various penalties and attorney fees. On appeal, this court affirmed the judgment in part, reversed it in part, and awarded additional attorney fees for work performed on appeal. *Romero v. Garan's, Inc.*, 05-1297 (La.App. 3 Cir. 4/19/06), 929 So.2d 258.

The matter now before us arises from a February 16, 2012 motion filed by Ms. Romero wherein she sought awards of penalties and attorney fees based on the actions of Garan's, Inc. and its workers' compensation insurer, Liberty Mutual Insurance Company (collectively referred to as Garan), in terminating her TTD benefits on January 10, 2012, and in failing to timely reimburse her mileage requests submitted on September 15, 2011; September 29, 2011; October 6, 2011; and October 17, 2011.

In response to Ms. Romero's motion, Garan filed an exception asserting that the mileage reimbursement portion of the motion constituted the improper use of summary proceedings. Following an April 23, 2010 hearing on both the motion

and exception, the WCJ rendered judgment in favor of Ms. Romero, awarding her $3,000.00 in penalties and $3,000.00 in attorney fees based on Garan's untimely payment of indemnity benefits, rather than termination of benefits. However, with regard to the mileage reimbursement claim, the WCJ granted Garan's exception and converted this claim to an ordinary proceeding. The WCJ did not reduce its rulings arising from this hearing to writing until July 12, 2012.

On July 2, 2012, and before the mileage reimbursement issue came to trial, Ms. Romero amended her pleadings to request additional penalties and attorney fees based on Garan's denial of the medical treatment recommended by her doctor. A trial on the merits of the remaining issues occurred on August 27, 2012, after which the WCJ took the issues under advisement. On October 22, 2012, the WCJ rendered oral reasons for judgment finding that Garan was untimely in paying Ms. Romero's mileage request and awarding her $2,000.00 in penalties and $3,500.00 in attorney fees. However, the WCJ denied her claim for penalties and attorney fees based on Garan's refusal to approve the medical treatment. The WCJ executed a written judgment conforming to its oral reasons for judgment on November 16, 2012.

Ms. Romero appeals from this judgment, raising four assignments of error:

1.  The workers' compensation judge erred in bifurcating the medical and indemnity issues in the Motion for Penalties and Attorney's Fees.

2.  The workers' compensation judge erred in allowing LSA R.S. 23:1203.1 as a defense in a pending claim for the nonpayment of reasonable and necessary medical treatment.

3.  It was error for the workers' compensation judge to limit the penalty award for discontinuance of benefits to $3,000.00.

2

4.    The workers' compensation judge erred in failing to award a $3,000.00 penalty for each failure to pay mileage and $3,000.00 for the denial of medical treatment recommended by Dr. Jindia.

**OPINION**

All of Ms. Romero's assignments of error raise questions of law. Therefore, we will review each issue in order to determine whether the WCJ was legally correct in his ruling. *Orr v. Acad. La. Co., L.L.C.*, 12-1411 (La.App. 3 Cir. 5/1/13), __ So.3d __.

*Bifurcation of Medical and Indemnity Issues*

In her first assignment of error, Ms. Romero argues that the WCJ erred in granting the exception of improper use of a summary proceeding and ordering the bifurcation of the mileage issue from the indemnity issue. As a result of the grant of the exception, the indemnity issue was decided on April 23, 2012, while the mileage issue was heard on August 27, 2012. Based on the WCJ's November 16, 2012 judgment, Ms. Romero was awarded penalties and attorney fees based on Garan's untimely mileage reimbursement.

> It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to such controversies. *Louisiana State Board of Nursing v. Gautreaux*, 2009-1758 (La.App. 1st Cir.6/11/10), 39 So.3d 806, 811, *writ denied*, 2010-1957 (La.11/5/10), 50 So.3d 806. An issue is moot when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." *Id.* Thus, a case is moot when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. *Id.* If the case is moot, there is no subject matter on which the judgment of the court can operate. *Id.*

*Animal Legal Def. Fund v. State, Dep't of Wildlife & Fisheries*, 12-971, pp. 15-16 (La.App. 1 Cir. 4/25/13), __ So.3d __, __ (footnote omitted), *writ denied*, 13-1565 (La. 10/4/13), 122 So.3d 1025.

In this instance, we find that the issue raised by Ms. Romero has been rendered "abstract or purely academic" by the WCJ's November 16, 2012

3

judgment awarding her penalties and attorney fees based on Garan's failure to timely reimburse her for mileage. "The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933. In this instance, the grant of Garan's exception was neither determinative of the merits nor resulted in irreparable harm to Ms. Romero. Thus, Ms. Romero should have sought a supervisory writ from this court to review the WCJ's decision. Doing so would have avoided the very delay and increased work of which she now complains. Accordingly, we find no merit in this assignment.

### *Louisiana Revised Statutes 23:1203.1*

In her next assignment of error, Ms. Romero argues that the WCJ erred in relying on La.R.S. 23:1203.1 in denying her request for penalties and attorney fees based on Garan's November 30, 2011 refusal to authorize the medical treatment recommended by Dr. Sanjiv K. Jindia, a Lafayette, Louisiana pain management doctor. She argues that La.R.S. 23:1203.1, which was enacted pursuant to 2009 La. Acts No. 254, § 1, does not apply in this instance because her work-related accident occurred eight years prior to its enactment, and its provisions should not be applied retroactively. She further argues, as part of her fourth assignment of error, that the WCJ erred by refusing her penalties and attorney fees based on Garan's refusal to authorize the medical treatment.

Louisiana Revised Statutes 23:1203.1 requires the director of the office of workers' compensation administration to appoint a medical advisory council to develop a medical treatment schedule for workers' compensation cases. It then requires that the medical treatment schedule so developed be promulgated by the director and office of workers' compensation administration no later than January

4

1, 2011. La.R.S. 23:1203.1(B)(1). With regard to the particulars of its application, the statute currently provides in pertinent part:

. . . .

I. *After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule.* Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.

J. After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. *If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers' compensation administration medical director on a form promulgated by the director.* The medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.

K. After the issuance of the decision by the medical director of the office, any party who disagrees with the medical director's decision, may then appeal by filing a "Disputed Claim for Compensation," which is LWC Form 1008. The decision of the medical director may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director was not in accordance with the provisions of this Section.

(Emphasis added for later reference in opinion.)

The medical treatment schedule was promulgated in June of 2011. LAC 40:I, § 2013.

On November 22, 2011, Dr. Jindia faxed a request form to Liberty Mutual seeking preauthorization to perform a radiofrequency facet-nerve ablation on Ms. Romero. Liberty Mutual's utilization-review department telephoned Dr. Jindia's office on November 29, 2011, denying the request and, the next day, forwarded a written denial. The written denial received by Dr. Jindia from the peer-review practitioner, who made the denial decision, stated that "Louisiana guidelines do not apply[,]" and that "[t]he request is not medically necessary." In explaining this conclusion, the peer-review practitioner stated:

> The claimant does not have physical examination findings consistent with facet originating pain and does not have diagnostic imaging correlating with facet degenerative changes in the records provided. A psychosocial screening has not been provided for review and the claimant's benefit from the previous ablation has not been specified. Records do not reflect that lower levels of care, including physical therapy, have been exhausted. Given the above clinical information and guidelines criteria, the request is denied.

The written report further contained the following notice:

> APPEAL RIGHTS: The physician or injured worker has the right to request an appeal with the OWCA Medical Director by filing the LWC-WC Form 1099, along with supporting medical records within fifteen days of this notification. The LWC-WC Form 1009 and instructions on how to complete the form are posted on the website, www.LAWORKS.net.

Neither Ms. Romero nor Dr. Jindia sought an appeal with the OWCA medical director.

Shelly Dunn, Liberty Mutual's claims adjustor on Ms. Romero's case, received a copy of the November 29, 2011 denial letter sent to Dr. Jindia, but three weeks and two days later, she decided to overrule the utilization review decision and approve the procedure. She testified that on December 22, 2011, she unsuccessfully attempted to call Dr. Jindia's office to inform him that she would approve the treatment. In her December 22, 2011 office note, she stated:

6

Repeat RFA was denied by preauth – prior RFA done in June and did help clt symptoms and appears reasonable for repeat 1 x a year per my experience with prior SMO on RFA's. If block helped then RFA is indicated and repeat is indicated and repeat appropriate yearly if relief lasts 6-12 mos. It has been 6 mos however does not appear rx usage decreased and we dont have specific info on her benefit from the prior ablation. I feel it is prudent to approve the repeat RFA until we can get SMO to comment on the frequency of repeat RFA's – this is necessary to avoid 1008 until we can have issue properly addressed.

Called the dr. office to approve but they are closed now for the holiday until Tuesday. I will call then and approve auth.

She testified that she telephoned Dr. Jindia's office again on December 27, 2011, but was unable to speak to anyone. Instead, she left a message stating that she was overriding the preauthorization denial and requested that his office contact her.

When Dr. Jindia failed to contact her after she left the December 27, 2011 message, Ms. Dunn faxed his office a notice of approval for the procedure on January 6, 2012. She suggested that her decision to override the peer-review denial was basically a business decision. She explained that she wanted matters to move forward, and she did not feel that the issue was worth litigating.

The WCJ did not reach the merits of Ms. Romero's claim for penalties and attorney fees for the failure to authorize the radiofrequency facet-nerve ablation procedure recommended by Dr. Jindia. Instead, he rejected the claims because neither Ms. Romero nor Dr. Jindia had timely appealed the rejection pursuant to La.R.S. 23:1203.1(J). Thus, the initial inquiry is to determine whether La.R.S. 23:1203.1 applies retroactively.

Louisiana Civil Code Article 6 provides, "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Based on this language, courts have a two-

fold inquiry. They must first determine whether the legislature expressly stated that the law is to apply retroactively or prospectively. In the absence of such expression, courts must classify the law as either substantive, procedural, or interpretative. *Davis v. St. Francisville Cntry. Manor, LLC*, 05-72 (La.App. 1 Cir. 2/10/06), 928 So.2d 549, *writs denied*, 06-604 (La. 5/26/06), 930 So.2d 25, and 07-481 (La. 4/27/07), 955 So.2d 699.

> Procedural laws prescribe a method for enforcing a previously existing substantive right and relate to the form of the proceeding or the operation of the laws. *Keith v. U.S. Fidelity & Guaranty Company*, [96-2075 (La. 5/9/97),] 694 So.2d [180,] 183. Substantive laws either establish new rules, rights, and duties or change existing ones. Interpretive laws, on the other hand, do not create new rules, but merely establish the meaning that the interpretive statute had from the time of its initial enactment. It is the original statute, not the interpretive one, that establishes the rights and duties. *St. Paul Fire & Marine Insurance Company* [*v. Smith*], 609 So.2d [809,] 817 [(La.1992)].

*Rochelle v. LeBlanc*, 10-1901, p. 5 (La.App. 1 Cir. 5/6/11), 65 So.3d 240, 243.

The legislature did not expressly state whether La.R.S. 23:1203.1 applies prospectively only or both prospectively and retroactively. However, the language appearing in italics in the previously quoted statute-language could lead one to presume that the legislature intended the statute to apply both prospectively and retroactively. Even assuming that the legislature, through this language, intended the statute to apply retroactively, the court in *Davis*, 928 So.2d at 554-55, held that "even where the legislature has expressed its intent to give a law a retroactive effect, the law may not be applied retroactively if doing so would impair contractual obligations or disturb vested rights in violation of the Contract and Due Process Clauses of the Federal and State Constitutions."

A panel of this court has previously addressed the retroactivity issue in *Cook v. Family Care Services, Inc.*, 13-108 (La.App. 3 Cir. 8/28/13), 121 So.3d 1274,

8

and concluded that La.R.S. 23:1203.1 was procedural in nature and, therefore, could be applied retroactively. However, another circuit has reached an opposite result. In *Church Mutual Insurance Co. v. Dardar*, 12-659, 13-37 (La.App. 4 Cir. 6/26/13), 119 So.3d 967, the fourth circuit held that La.R.S. 23:1203.1 was substantive in nature; therefore, it would only apply prospectively. In reaching this conclusion, the fourth circuit held that the law, "which contains guidelines that did not exist when [plaintiff] was injured, creates and places rules, rights, and duties upon a claimant seeking reimbursement for recommended treatment." *Id.* at 975.

We agree that La.R.S. 23:1203.1 should have prospective application only, and, in reaching that decision, we specifically overrule our prior decision in *Cook*, 121 So.3d 1274. Although the law appears to be procedural in nature, it has a substantive effect in that it requires an employee to first seek an appeal from the medical director of the office of workers' compensation, and, only then, if not satisfied with that ruling, can the employee file a disputed claim and seek review before the WCJ, albeit with a more stringent burden of proof. Thus, although the legislature's intent in enacting La.R.S. 23:1203.1 was to ensure the delivery of medical care and treatment in a timely and efficient manner, an injured employee is required to cross an additional hurdle in order to receive the care recommended by his or her physician. Accordingly, we find that La.R.S. 23:1203.1 has a substantive effect and that it should only apply prospectively. Thus, we find that the WCJ erred in relying on La.R.S. 23:1203.1 in finding that Ms. Romero was not entitled to penalties and attorney fees based on Garan's initial refusal of the radiofrequency facet-nerve ablation recommended by Dr. Jindia.

Having reached the conclusion that the WCJ legally erred in applying La.R.S. 23:1203.1, we will now perform a de novo review of the record to

9

determine whether Ms. Romero is entitled to penalties and attorney fees for Garan's refusal to authorize the medical treatment pursuant to the law in effect at the time of her work-related injury.

The failure to authorize necessary medical treatment is considered a failure to furnish medical benefits, as required by La.R.S. 23:1203, and will subject the employer to penalties and attorney fees pursuant to La.R.S. 23:1201(F). *Brown v. Lafayette Ass'n. of Retarded Citizens, Inc.*, 11-1595 (La.App. 3 Cir. 6/20/12), 94 So.3d 950. At the time of Ms. Romero's injury, La.R.S. 23:1201(F) provided as follows:

> Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
>
> (1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
>
> (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
>
> (3) Except as provided in Paragraph (4) of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
>
> (4) In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider. This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.

(5) No amount paid as a penalty or attorney fee under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance.

In *Magbee v. Federal Express*, 12-77, p. 13 (La.App. 3 Cir. 12/12/12), 105 So.3d 1048, 1057 (quoting *LeMelle v. Wal-Mart Stores, Inc.*, 04-527, pp. 10-11 (La.App. 3 Cir. 9/29/04), 883 So.2d 526, 552-53), we stated the law pertaining to the award of penalties based on an employer's refusal to authorize recommended medical treatment based on utilization review:

> As stated in *Harrington v. Coastal Construction & Engineering*, 96-681, p. 3 (La.App. 3 Cir. 12/11/96), 685 So.2d 457, 459, *writ denied*, 97-0109 (La.3/7/97), 689 So.2d 1375, "the employer must rely on competent medical advice when the decision to deny the medical treatment is made." The mere production of a different opinion of a doctor who never examined the claimant does not constitute competent medical advice sufficient to reasonably controvert the claim. *Id.*; *see also Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. While a utilization review process has its place in the workers' compensation process, this court has consistently held that a long-distance diagnosis by a physician advisor is not an acceptable basis for denial of treatment and benefits. *See id.*

Based on the evidence, Garan refused the radiofrequency facet-nerve ablation based on the utilization-review physician's recommendation. Outside of this recommendation, Ms. Dunn's office notes reveal that she had insufficient information regarding the frequency that the recommended treatment should occur and that she planned to schedule a second medical opinion to address this issue. However, until that occurred, she was approving the treatment.

Garan and Liberty Mutual argue that, notwithstanding the initial denial of the recommended treatment, penalties do not apply because the procedure was subsequently approved within the sixty-day window provided for in La.R.S.

23:1203(E).[1]   Similar to the factual situation in *Pete v. Quality Construction Specialists*, 09-642 (La.App. 3 Cir. 12/9/09), 25 So.3d 241, *writ denied*, 10-41 (La. 3/12/10), 28 So.3d 1029, the issue is not whether the authorization was ultimately given within the sixty days, but whether the employer/insurer possessed any factual or medical information to reasonably reject Dr. Jindia's request when it did so.   In this case, Liberty Mutual performed no investigation, had no competent medical advice upon which to base the denial, and merely relied on the opinion of a medical provider who reached a different opinion from Dr. Jindia without having ever examined Ms. Romero.   Accordingly, we find that Garan and Liberty Mutual failed to reasonably controvert Dr. Jindia's request for the radiofrequency facet-nerve ablation prior to denying approval.   Based on this finding, we award Ms. Romero $2,000.00 in penalties pursuant to La.R.S. 23:1201(F).

*Termination of Indemnity Benefits*

In her next assignment of error, Ms. Romero argues that the WCJ's award of penalties pursuant to La.R.S. 23:1201(G), rather than La.R.S. 23:1201(I), was error. The former statute relates to a failure to timely pay benefits, while the latter relates to a claim arising from the termination of benefits.  Ms. Romero asserts that this is a termination-of-benefits situation based upon Garan's January 10, 2012 action.

In response to the appeal on this issue, Garan, in its appellate brief, argues that the July 12, 2012 judgment awarding Ms. Romero penalties and attorney fees, based on the untimely payment of her indemnity benefits, was a final, appealable judgment.  Thus, it claims that her appeal on this issue should be dismissed as being untimely.  We agree.

_____

[1] At the time this matter was tried, La.R.S. 23:1201(E) provided that "[m]edical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.

A judgment which determines the merits of an action, whether in part or in whole, is a final judgment, which is appealable if the law provides for appeals in such causes. La.Code Civ.P. arts. 1841, 2083. The Workers' Compensation Act provides that a workers' compensation judgment is appealable to the court of appeal for the judicial district in which the claimant filed his or her claim. La.R.S. 23:1310.5(A)(2). Furthermore, the delay for filing a devolutive appeal is governed by La.Code Civ.P. art. 2087. That article provides that an appeal, which does not suspend the effect of an appealable order or judgment, must be taken within sixty days of the expiration of the delay for applying for a new trial or judgment notwithstanding the verdict or from the date the trial court mails notice denying the application for a new trial or judgment notwithstanding the verdict.

The WCJ's July 12, 2012 judgment awarding Ms. Romero penalties based on La.R.S. 23:1201(G) adjudicated the merits of that issue. Thus, the judgment became a final, appealable judgment sixty days after July 23, 2012, since no party filed an application for new trial. Ms. Romero's motion and order for appeal was filed on December 4, 2012. The failure to timely file a devolutive appeal creates a jurisdictional defect, and neither this court "nor any other court has the jurisdictional power and authority to reverse, revise or modify a final judgment after the time for filing a devolutive appeal has elapsed." *Baton Rouge Bank & Trust Co. v. Coleman*, 582 So.2d 191, 192 (La.1991). Therefore, we find that Ms. Romero's appeal from the July 21, 2012 judgment was untimely. Pursuant to La.Code Civ.P. art. 2162, a jurisdictionally-defective appeal can be dismissed at any time. Accordingly, Ms. Romero's appeal on this issue is dismissed.

*Mileage Reimbursement*

In her final assignment of error, Ms. Romero argues that the WCJ correctly awarded her penalties based on Garan's failure to timely pay her mileage request. However, she argues that the WCJ erred in awarding her only one penalty since Garan was untimely in paying two separate mileage requests.

Louisiana Revised Statutes 23:1201(E) provides that the payment of medical benefits shall occur within sixty days after the employer or insurer receives written notice. The only dispute here is in the number of penalties Ms. Romero should have received based on Garan's untimely payment. Four separate mileage requests dated September 15, 2011; September 29, 2011; October 6, 2011; and October 17, 2011, were attached to her February 2, 2012 motion and order for attorney fees. Ms. Romero admitted that she was not involved in preparing the requests, other than filling out the forms, and she had no personal knowledge as to when the requests were mailed to Garan.

Ms. Dunn testified that the only mileage requests she found in her computer system when she received Ms. Romero's motion were the September 15 and October 17, 2011 requests. She stated that she paid these by check on October 28, 2011. As to the remaining two requests, Ms. Dunn stated that they were not in her computer system. She testified that all incoming mail goes to Liberty Mutual's mail department, where it is scanned into an electronic system and then electronically attached to the appropriate file. Ms. Dunn stated that it is rare for mailed items not to appear in the system. Generally, she said, she has no problem receiving items mailed to her.

Ms. Dunn testified that after receiving Ms. Romero's motion, she did not pay the two remaining requests until Garan's counsel received answers to

14

discovery propounded on this issue. Thereafter, she issued a check for the remaining requests on June 4, 2012.

In his oral reasons, the WCJ found that there was insufficient evidence in the record to prove that Ms. Dunn received the September 29 and October 6, 2011 requests prior to the filing of Ms. Romero's motion on February 16, 2012. The WCJ further held that since the June 4, 2012 payment was more than sixty days from the date the motion was filed, Ms. Romero was entitled to a single $2,000.00 penalty. The WCJ explained when questioned that only one penalty was awarded because the mileage requests were attached to a single item.

Although multiple penalties are allowed by statute for multiple violations of La.R.S. 23:1201(E), we find no error in the WCJ's award of a single penalty. The fact that Ms. Dunn received the September 15 and October 17, 2011 submissions is insufficient to prove that she also received or should have received the September 29 and October 6, 2011 submissions. Ms. Romero bore the burden of proving that Ms. Dunn received written notice of the two items. The record is devoid of such evidence as the requests were mailed by regular mail rather than certified mail, return receipt requested. Accordingly, we affirm the WCJ's award of a single penalty.

### Attorney Fees

Based on our findings that Ms. Romero is entitled to penalties based on Garan's failure to authorize medical treatment, La.R.S. 23:1201(F), we amend the WCJ's judgment to award her an additional $2,500.00 in attorney fees for a total attorney fee award of $6,000.00.

**DISPOSITION**

For the foregoing reasons, we reverse the judgment of the workers' compensation judge rejecting Dena Romero's claim for penalties and attorney fees for the failure of Garan's, Inc. and Liberty Mutual Insurance Company to approve the recommended medical treatment, and we render judgment in her favor and against Garan's, Inc. and Liberty Mutual Insurance Company, awarding her a $2,000.00 penalty and $2,500.00 attorney fee. We dismiss that portion of Dena Romero's appeal addressing the penalty award of the July 12, 2012 judgment as being untimely filed and affirm the remainder of the judgment of the Workers' Compensation Judge. We assess one-half of the costs of this appeal to Dena Romero and one-half to Garan's, Inc. and Liberty Mutual Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED IN PART; AND DISMISSED IN PART.**

NUMBER 13-482

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

DENA ROMERO

VERSUS

GARAN'S INC.

AMY, J., dissenting in part.

I respectfully dissent, in part, from the majority opinion. Chiefly, I do not find that, in this case, the retroactive/prospective construct is helpful with regard to consideration of La.R.S. 23:1203.1. Rather, it seems to me that, by focusing upon the parties' "dispute," the express wording of the statute accounts for the fact that the Office of Workers' Compensation maintains continuing jurisdiction over a claim and that various issues arise during the life of that claim. Specifically, La.R.S. 23:1203.1(I) anticipates the statute's application "[a]*fter the promulgation of the medical treatment schedule*" and subsequently, in Paragraph J, dictates the use of the review procedures set forth "[*i*]*f any dispute arises after January 1, 2011 . . . .*" (Emphasis added.)

In this case, the *dispute* involves the November 2011 denial of the claimed medical treatment. That date is after both the promulgation of the medical treatment schedule and after the January 1, 2011 applicability point of La.R.S. 23:1203.1(J). Therefore, and in light of the continuing jurisdiction of the workers' compensation judge to hear disputes related to a claim as they arise, I find the facts that this accident occurred in 2000 and that the statute was not enacted until 2009 are irrelevant. Rather, the *dispute* did not arise before the statute's legislatively mandated date of application. In this sense, I do not see that the review procedure

of the statute is at all being applied retroactively. Instead, in the case before us, that procedure is only being applied to disputes arising after that date.

Further, and in light of my opinion that La.R.S. 23:1203.1 is applicable, I do not join in the majority's award of attorney fees for work performed on appeal.

For these reasons, I dissent, in part, from the majority opinion and would affirm the ruling of the workers' compensation judge.

DENA ROMERO

VERSUS

GARAN'S, INC.


**KEATY, Judge, dissenting in part.**


For the reasons assigned in *Cook v. Family Care Services, Inc.*, 12-108 (La.App. 3 Cir. 8/28/13), 121 So.3d 1274, I find no error in the WCJ's retroactive application of La.R.S. 23:1203.1 to deny Ms. Romero's claim for penalties and attorney fees based on Garan's initial refusal to authorize the facet-nerve ablation recommended by Dr. Jindia. Thus, I disagree with the majority's decision to overrule *Cook*, to reverse the WCJ's denial of Ms. Romero's claim for penalties and attorney fees based on its finding that La.R.S. 23:1203.1 is substantive and should only apply prospectively, and to award Ms. Romero $2,000.00 in penalties and an additional $2,500.00 in attorney fees under La.R.S 23:1201(F) as it existed at the time of Ms. Romero's injury. Accordingly, I respectfully dissent from that portion of the majority opinion. In all other respects, I agree with the majority opinion.

DENA ROMERO

VERSUS

GARAN'S, INC.

**CONERY, J., concurs in part, dissents in part and assigns reasons.**

The majority convened an en banc hearing and found that the 2009 amendment to the Worker's Compensation Act, La.R.S. 23:1203.1, applies prospectively only. The statute as amended now requires that all medical disputes arising after January 1, 2011, be submitted to a medical director. The majority is of the opinion that the statute has a substantive effect and should be applied only prospectively to claims arising after the effective date of the amendment, January 1, 2011, overruling a panel of this court in *Cook v. Family Care Services, Inc.*, 13-108 (La.App. 3 Cir. 8/28/13), 121 So.3d 1274. I respectfully dissent from that ruling.

I concur with the dissents of Judges Pickett, Amy, and Keaty which correctly point out that the particular issue in this case, whether the medical procedure requested on November 22, 2011, was timely authorized, did not arise until *after* the amendment became law in January, 2011, hence the statute was correctly applied prospectively by the Worker's Compensation Judge (WCJ). While I agree on that issue, I write separately to stress that we should not have taken this case en banc and should not have ruled on this issue at all. The majority's decision was unnecessary to a resolution of the issue under review. Proper exercise of judicial restraint compels us to decide on more narrow grounds, if we can do so. *Wise v. Bossier*

*Parish School Bd.*, 02-1525 (La. 6/27/03), 851 So.2d 1090.

If the defendant timely authorized the medical procedure at issue in this case, there was no "denial," hence no penalties are owed. Counsel for defendant correctly pointed out and reaffirmed when questioned by this writer in oral argument that the medical procedure in question was in fact approved within the sixty day time limit set out in La.R.S. 23:1201(E)(1). The majority agreed with the timeline, but nonetheless reversed the WCJ and awarded penalties and attorney fees based on an initial "denial" of the procedure by the defendant's utilization review committee (u. r. committee).

The facts of this case are not in dispute. To briefly recap, on November 22, 2011, Dr. Jindia faxed a request form to Liberty Mutual, Garan's worker's compensation insurer, seeking pre-authorization to perform a medical procedure on the claimant, a "radio-frequency facet nerve ablation." There was no information on the request and no analysis or opinion from Dr. Jindia as to why the test was necessary or how it would medically benefit the claimant. On November 30, Liberty Mutual's u. r. committee phoned Dr. Jindia and denied the request based on an analysis by the nurse and physician that the procedure requested had not been shown to be necessary by the Doctor. The law is clear that an employer/insurer can reasonably controvert a claim if the employer/insurer "engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant." [sic] *Pete v. Quality Const. Specialists and Bridgefield Cas. Ins. Co.*, 09-642 (La.App. 3 Cir. 12/9/09), 25 So.3d 241(citing *Brown vs. Texas-La Cartage, Inc.,* 98-1063, P. 9 (La. 12/1/98), 721 So. 2d. 885, 890). When a medical dispute arises, the statute as amended effective January 1, 2011, now requires that the "aggrieved party," in this case the claimant

file an appeal with the OWC medical director. La.R.S. 12:1203.1. No such appeal to the medical director was filed. The WCJ had issued a previous order on May 2, 2005 in this case ordering defendant to pay all reasonable and necessary medical expenses. After the committee's "denial," plaintiff did not file an immediate motion requesting a hearing before the WCJ prior to final approval of the medical procedure.

The record shows that shortly after the u. r. committee's recommendation to deny the procedure, the claims adjuster/supervisor for defendant, Ms. Dunn, then reviewed the file. The evidence is uncontroverted that on December 22, 2011, within thirty days of the initial "denial" of the procedure requested, Ms. Dunn overruled the recommendation of the u. r. committee and called the doctor to authorize the procedure. The doctor's office was closed, so she called again on December 27. Again no answer, so she left a message authorizing the procedure. She sent a follow up fax on January 6, 2012, well within the sixty day time limit set by La.R.S. 23:1201(E)(1), and approved the medical procedure. The doctor performed the procedure and continued to treat the plaintiff, all of which was not in dispute. Plaintiff was not prejudiced in any way by the initial "denial" of the u. r. committee, as the procedure was, in fact, timely authorized and performed.

On February 16, 2012, plaintiff filed his first motion for penalties and attorney fees, claiming that his compensation benefits were terminated without cause, and certain mileage expenses had not been paid timely. No mention was made of the u. r. committee's initial "denial" of the medical procedure, perhaps because the procedure had in fact been approved on December 22, 27, and January 6.

Defendant filed an exception of improper use of summary procedure. The Exception of Improper Use of Summary Proceeding was granted and the WCJ

3

bifurcated the mileage issue. No supervisory writ was filed by plaintiff. Trial on the improper termination of benefits issue was conducted on April 23, 2012 by the WCJ.

At the April 23, 2012 trial, there was a stipulation that weekly benefits were stopped on January 9, 2012 and re-instated on February 9, 2012. No explanation was given by defendant except to admit a mistake was made. The WCJ imposed a $3,000 penalty for improper termination of weekly indemnity benefits calculated pursuant to 23:1201 (G), failure to pay in accordance with a judgment. Defendant did not appeal this issue.

Plaintiff appealed, asking this Court to reverse the WCJ on the bifurcation issue. The majority found that issue was moot and I concur. The plaintiff also assigned as error the failure of the WCJ to assess an $8,000 penalty at the April 23, 2012 hearing for improper termination of weekly indemnity benefits pursuant to La.R.S. 23:1201. The majority found that the appeal taken on this issue was not timely. I concur.

The mileage issue was rescheduled as a trial on the merits on July 18, 2012. In the meantime, after plaintiff/appellee had lost on the improper termination of benefits issue, on June 28, 2012, plaintiff filed an amended motion for penalties and attorney fees claiming the medical procedure performed by Dr. Jindia had not been timely authorized. That amended motion was also fixed for hearing as a trial on the merits on July 18, 2012.

At the trial, the WCJ found two medical travel bills were not paid within sixty days of the date of proper submission and awarded $2,000 in a single penalty, since the bills were submitted together, and $3,000 in attorney fees. Defendants did not appeal that ruling. Plaintiff appealed, claiming additional penalties. The majority affirmed the WCJ on that ruling, and I concur.

4

Therefore, the only remaining issue is the question of penalties and attorney fees for the alleged "denial" of the medical procedure recommended by Dr. Jindia. After a full evidentiary hearing, the WCJ denied penalties and attorney fees on this issue, assigning two reasons for his decision. In the first reason, the WCJ found that the procedure mandated by the newly amended statute, La.R.S. 23:2303.1, was not followed. The WCJ held that the claimant failed to file an appeal within fifteen days of the "denial" of the medical procedure with the OWC medical director as now required by the statute. The majority focuses on that portion of the ruling and, incorrectly in my opinion, holds that the statute should be applied prospectively only. Since the underlying worker's compensation order requiring the defendant to pay ongoing medical expenses had been issued in 2005, the majority held that the claimant had a right to an immediate hearing before the WCJ and need not have submitted the claim to the medical director.

The majority specifically found that La.R.S. 12:1203.1 affects substantive rights and can only be applied to cases *originating* after January 1, 2011. The effect of the majority ruling is that if a case was pending or had been heard by the WCJ before the effective date of the amendment, as in this case, then even a particular medical issue arising after the effective date had to be brought back before the WCJ, not the medical director.

I disagree for the reasons assigned by Judges Pickett, Amy, and Keaty. The particular issue in this case, failure to timely pay for the medical procedure requested by Dr. Jindia on November 22, 2011, occurred after the effective date of the statute, and the wording of the statute is clear that "all disputes" involving failure to provide medical treatment arising after the effective date of the amendment must first be

5

submitted to the medical director.

In this case there was in fact a trial on the merits on the issue of "denial" of medical benefits and the WCJ made factual findings. The majority gave short shrift to the second basis for the WCJ's ruling issued after he heard all the evidence. The majority did not discuss or apply the manifest error standard to his findings. The WCJ had specifically relied on the testimony of Ms. Dunn and found that the procedure at issue had in fact been timely authorized and that no penalties and attorney fees were owed. The issue of whether La.R.S. 23:1203.1 should be applied prospectively or retrospectively should not have been considered by this court, as there is no underlying "denial" of a medical procedure on which to base a decision. Therefore, in my opinion, there was no need to call an en banc hearing and rule on the prospective/retrospective application of the statute, as such a ruling is obiter dictum.

Obiter Dictum has been classically defined as a judge's opinion on a matter that is not necessarily involved in the case or essential to its determination. BLACK'S LAW DICTIONARY (9th ed. 2009). It is "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding." *Spott v. Otis Elevator Co.*, 601 So.2d 1355 (La.1992). A case should be decided on the narrowest grounds in order to avoid unnecessary obiter dictum. *Wise v. Bossier Parish School Bd.*, 02-1525 (La. 6/27/03), 851 So.2d 1090. *See also Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance*, 98-0601 (La. 10/20/98), 720 So.2d 1186; *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075 (7th Cir. 1986) (Posner, J.).

Had the WCJ refused to conduct a hearing on the merits and/or based his decision only on the issue that the procedure outlined in the amended version of

6

La.R.S. 23:1203.1 had not been followed, and then denied penalties and attorney fees on that basis only, the case may then have been ripe for us to consider proper statutory interpretation. However, he did not. The WCJ specifically conducted a full evidentiary hearing and found that the medical procedure at issue was timely authorized. He accepted Ms. Dunn's testimony. This case can and should be decided on the narrow grounds of whether, under the manifest error rule, there was sufficient evidence in the record to support the WCJ's ruling. *Tomasik v. La. State Veterans Affairs Office*, 13-451 (La.App. 3 Cir. 11/6/13), 124 So.3d 613; *Foster v. Rabalais Masonry, Inc.*, 01-1394 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784. *Magbee v. Federal Express,* 12-77 (La.App. 3 Cir. 12/12/12), 105 So.3d 1048.

Citing *Pete,* 25 So.3d 241, and *Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313, plaintiff/appellee argues that when the employer denies a medical procedure *arbitrarily*, penalties and attorney fees are owed even if the employer eventually approves the procedure within the sixty day time delay provided by La.R.S. 23:1201(E)(1). He claims the u. r. committee arbitrarily "denied" the claim.

Ms. Dunn's testimony clearly refuted that conclusion. In fact, the majority actually quoted from Ms. Dunn's report explaining the u. r. committee's findings and its reasons:

> The report received by Ms. Dunn from the peer-review practitioner stated that after reviewing the criteria and current literature pertaining to the recommended treatment, it reached the following conclusion.

> The request is not medically necessary. The claimant does not have physical examination findings consistent with facet originating pain and does not have diagnostic imaging correlating with facet degenerative changes in the records provided. A psychosocial screening has not been provided for review and the claimant's benefit

7

from the previous ablation has not been specified. Records do not reflect that lower levels of care, including physical therapy, have been exhausted. Given the above clinical information and guidelines criteria, the request is denied.

Again, no explanation or opinion had accompanied Dr. Jindia's request to conduct the medical procedure. Even if the adjuster had not immediately approved the procedure, there is a reasonable basis for the initial denial by the u. r. committee established by the evidence.

The undisputed facts of this case are easily distinguishable from *Pete* and *Phillips*. In *Pete*, on June 28, 2006, Pete saw Dr. Michel Heard, who recommended a Lumbar Epidural Steroid Injection (LESI). The adjuster handling the claim denied the request on July 14 *with no reasons stated*. On August 9, Pete filed a disputed claim for compensation, penalties and attorney fees. The adjuster then reversed her position and approved the treatment after she received the claim.

In *affirming* the WCJ's finding that the claim had been arbitrarily denied, a panel of this court stated, "Dr. Heard subsequently recommended two more LESI series that the insurance adjuster treated in the same manner, first denying and then approving the treatment." *Pete*, 25 So.3d at 243. As noted by the panel, the WCJ found factually that the denial of the first LESI series was arbitrary and capricious. The panel of this court went on to state in *Pete*:

> As the WCJ explained, no one could fault an adjuster who denied treatment for good cause but, after receiving more information, changed her mind. Noting that the record did not supply a valid reason for the denial and that defendants failed to produce the adjuster at the hearing so as to ascertain whether the denial was warranted, the WCJ concluded that the denial was arbitrary and capricious.

*Id.* at 244.

In this case, the opposite occurred. The initial request for medical treatment was sent to defendant's u. r. committee. The committee considered and

8

recommended denial of the request based on valid reasons stated. More importantly, the adjuster did timely approve the procedure some six months before the claim was filed.

The majority cites *Magbee v. Federal Express,* 12-77 (La.App. 3 Cir. 12/12/12), 105 So.3d 1048 (citing *LeMelle v. Wal-Mart Stores, Inc.,* 04-527 (La.App. 3 Cir. 9/29/040, 883 So.2d 526), for the proposition that the "mere production of a different opinion of a doctor who never examined the claimant does not constitute competent medical advice sufficient to reasonably controvert the claims." However, an employer/insurer has a continuing duty to assess factual information and re-evaluate its position when warranted. *Pete,* 25 So.3d 241. Ms. Dunn received and reviewed the u. r. report, pursuant to her responsibility. She then immediately overruled the u. r. panel's recommendation and timely approved the recommended treatment. The majority even quoted Ms. Dunn's reasoning in its opinion:

> Ms. Dunn testified that less than one month later, on December 22, 2011, she attempted to call Dr. Jindia's office to inform him that she would approve the treatment. In her December 22, 2011 office note, she stated:
>
> Repeat RFA was denied by preauth – prior RFA done in June and did help clt symptoms and appears reasonable for repeat 1 x a year per my experience with prior SMO on RFA's. If block helped then RFA is indicated and repeat is indicated and repeat appropriate yearly if relief lasts 6-12 mos. It has been 6 mos however does not appear rx usage decreased and we dont [sic] have specific info on her benefit from the prior ablation. I feel it is prudent to approve the repeat RFA until we can get SMO to comment on the frequency of repeat RFA's – this is necessary to avoid 1008 until we can have issue properly addressed.
>
> Called the dr. office to approve but they are closed now for the holiday until Tuesday. I will call then and approve auth. [sic]

In addition, unlike the adjuster in Pete, Ms. Dunn appeared at trial and testified, "When I realized U. R. had denied it, I wanted to approve it. So I called."

9

Unlike the facts in *Pete*, *Magbee*, and *LeMelle*, the WCJ found factually that the treatment had been approved timely within the sixty day time period. And unlike the facts in Pete, the amended motion for penalties for failure to *timely* authorize the medical procedure in this case was not filed *before* final approval, but months later, on June 28, 2012, shortly before the July 18, 2012 trial.

At trial, the WCJ relied on Ms. Dunn's testimony and found factually, "Ms. Dunn subsequently over-road the utilization review opinion and approved the procedure on January 6, 2012, by fax. The approval was received within sixty days." And again, "Ms. Dunn voluntarily over-road the U. R. determination within sixty days. Accordingly, the claim for a penalty regarding the radio frequency facet nerve ablation is denied." Under the manifest error rule, his findings must be affirmed unless clearly wrong. *Magbee*, 105 So.3d 1048; *Tomasik*, 124 So.3d 613; *Foster,* 811 So.2d 1160.

*Phillips* can also be easily distinguished. In *Phillips,* the defendant denied plaintiff's request for continued psychotherapy on three different occasions, February 5, 2001, February 28, 2001, and July 19, 2001, relying on the utilization review process plus video surveillance calling plaintiff's credibility into question. The defendant never did authorize the treatment until ordered to do so by the WCJ after trial on the merits. The WCJ found that defendant's refusal was arbitrary and capricious and a panel of the court affirmed, applying the manifest error rule.

Again, just the opposite happened in this case. The WCJ found that even though the u. r. committee recommended denial, Ms. Dunn, the claims supervisor actually responsible for the final decision, timely approved the procedure within the statutory sixty day time period, and long before the motion for penalties and attorney fees was filed on June 28, 2012.

10

Faced with the uncontroverted facts that the majority itself cited in its opinion, the majority then found "that Garan failed to reasonably controvert Dr. Jindia's request for the radiofrequency facet-nerve ablation prior to denying approval." Respectfully, the majority failed to properly take into account that there was a full trial on the merits of this particular issue, and that the WCJ made factual findings and accepted Ms. Dunn's testimony. The majority failed to appropriately apply the manifest error rule to the WCJ's findings. *Magbee*, 105 So.3d 1048; *Tomasik*, 124 So.3d 613; *Foster*, 811 So.2d 1160. The WCJ's opinion on this issue should be affirmed.

## CONCLUSION

In my view, this is not the type of case where we should convene an en banc panel and issue a far reaching opinion "overruling" a panel of this court on the important issue of whether La.R.S. 23:1203.1 should be applied prospectively or retrospectively.

Proper exercise of judicial restraint is warranted. There is no need to rule on or discuss the statutory interpretation of La.R.S. 23:1203.1. The case can and should be decided on narrow grounds and affirmed under the manifest error rule. *Magbee*, 105 So.3d 1048; *Tomasik*, 124 So.3d 613; *Foster,* 811 So.2d 1160; *see also Wise*, 851 So.2d 1090. In this case, there is no dispute about the facts. The WCJ correctly applied the law to the facts and his decision should be affirmed in all respects.