# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 13-753


ROBERT BURKE

VERSUS

VENTURE TRANSPORT LOGISTICS, LLC, ET AL.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 10-05602
ADAM C. JOHNSON, WORKERS COMPENSATION JUDGE

**********

## JOHN E. CONERY
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery, Judges.


**AFFIRMED.**

**Michael Benny Miller**
**Jacqueline B. Manecke**
**Post Office Drawer 1630**
**Crowley, Louisiana 70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Robert Burke**

**Bryan David Scofield**
**Scofield & Rivera**
**Post Office Box 4422**
**100 East Vermillion, Suite 301**
**Lafayette, Louisiana 70502**
**(337) 235-5353**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Ace American Insurance Company**
     **Venture Transport Logistics, LLC**

**CONERY, Judge.**

The plaintiff, Robert Burke ("Mr. Burke"), appeals the judgment of the Workers' Compensation Judge ("WCJ") in favor of Venture Transport Logistics, LLC and Ace American Insurance Company ("Defendants"), denying his claims for penalties and attorney fees, filed via motion practice in connection with and subsequent to a May 23, 2011 consent judgment ("Consent Judgment") between the parties. Mr. Burke also seeks an increase in the award of a $700.00 penalty for late payment of two bills from Lafayette General Medical Center, dated December 30 and 31, 2010, and seeks an increase in the attorney fees awarded.

The WCJ found that Defendants failed to timely pay three bills from University Medical Center, dated October 8, 2009, October 13, 2009, and January 8, 2010, ("UMC Bills"), all of which predated the Consent Judgment, and awarded $3,000.00 in penalties and $6,000.00 in attorney fees against Defendants. Defendants appeal the WCJ's ruling awarding the $3,000.00 in penalties and also seek a reduction in attorney fees and costs. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This lawsuit began on June 25, 2010, when Mr. Burke filed his Worker's Compensation Form 1008 Disputed Claim for Compensation, ("1008 Claim") against Defendants. The original 1008 Claim sought payment of medical bills, in addition to penalties and attorney fees. The 1008 Claim was the result of a work related accident on May 1, 2009, where Mr. Burke claims he injured his low back while strapping a load onto a flatbed trailer while working as a truck driver for Venture Transport Logistics, LLC.

Upon receipt of the original 1008 Claim, Defendants submitted interrogatories and requests for production of documents in an attempt to ascertain

the outstanding medical bills and to determine whether penalties and attorney fees might be owed.  Mr. Burke responded to the discovery requests and attached the three UMC Bills in question, which he identified as still unpaid. Both the discovery requests by Defendants and the responses by Mr. Burke were submitted into evidence at the hearing before the WCJ.

The parties settled the original 1008 Claim by virtue of a Consent Judgment submitted by the parties on May 16, 2011 and signed by the WCJ on May 23, 2011.[1]  The May 23, 2011 Consent Judgment states in pertinent part:

Based upon the stipulations of counsel:

IT IS ORDERED, ADJUDGED AND DECREED that **ROBERT BURKE** was injured while performing services for **VENTURE TRANSPORT LOGISTICS, LLC** on May 1, 2009, and at the time of his injury, **VENTURE TRANSPORT LOGISTICS, LLC** was insured by **ACE AMERICAN INSURANCE COMPANY** for worker's compensation benefits; that as a result of this accident, **ROBERT BURKE** is entitled temporary and total disability benefits in the amount of $546.00 per week beginning June 17, 2009, subject to a credit  for all workers' compensation benefits paid

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that **ROBERT BURKE** is entitled to all reasonable and necessary medical treatment as well as $8,000.00 in penalties and attorney's fees in amount of $8,000.00, plus expenses in the amount of $469.82 which covers *all* penalties and attorney's fees which may have been raised through May 11, 2011.

(Emphasis added).

Following the Consent Judgment, Mr. Burke filed three additional  motions, entitled "Motion and Order for Penalties and Attorney's Fees,"  "Plaintiff's Motion and Order to Amend Penalties and Attorney's Fees," and "Plaintiff's Third Motion

---

[1] The May 23, 2011 Consent Judgment is not listed in either the chronological or alphabetical index of the record.  However, a copy of the Consent Judgment was submitted as "Defense Exhibit 18" and "Plaintiff's Exhibit 28" at the hearing before the WCJ.

and Order to Amend Penalties and Attorney's Fees," which contained all of the claims made by Mr. Burke which are the subject of this appeal.

On June 27, 2012, the WCJ held a hearing on the merits of Mr. Burke's claims for penalties and attorney fees, after which he allowed the parties to submit post-trial briefs, received by the WCJ on July 30, 2012. On September 12, 2012, the WCJ issued a verbal ruling on the record, which he memorialized in a Judgment signed on November 7, 2012. Notice of signing of judgment was mailed on November 21, 2012. Defendants timely filed a motion for new trial, which was denied by the WCJ in a Judgment signed on February 20, 2013. Mr. Burke filed a timely devolutive appeal, which was followed by a timely suspensive appeal on behalf of Defendants.

Mr. Burke appeals the denial by the WCJ of medical payments and penalties and attorney fees in its verbal ruling of September 12, 2012. Counsel for Mr. Burke also seeks an increase of attorney fees from the $6,000.00 awarded by the WCJ to the submitted amount of $13,475.00.

In the verbal ruling, the WCJ found in Mr. Burke's favor on only two claims made on his behalf. The WCJ awarded Mr. Burke a $700.00 penalty for the late payment of two Lafayette General Medical bills dated December 30, 2010, and December 31, 2010. Defendants have paid that penalty in full and it is not part of their appeal before this court. Mr. Burke, however, in his appeal, seeks an increase in the $700.00 penalty awarded against Defendants for this claim to $3,000.00.

Defendants appeal the imposition of the $3,000.00 penalty for their failure to pay the UMC Bills pursuant to La.R.S. 23:1201(G). Defendants further appeal the attorney fee award of $6,000.00, as well as the amount of costs imposed of $1,551.63.

## MR. BURKE'S ASSIGNMENTS OF ERROR

Mr. Burke assigns the following eight assignments of error:

1.) The workers' compensation judge erred in denying a penalty for Venture's denial of the caudal epidural steroid injection recommended by Dr. Staines. [December 14, 2011]

2.) The workers' compensation judge erred in denying physical therapy ordered by Dr. Muldowny for Mr. Burke's knee and lower extremities and in denying a penalty for this violation. [October 5, 2011]

3.) The workers' compensation judge erred in failing to award the right hinged knee support recommended by Dr. Muldowny and in denying a penalty for Venture's denial of this treatment.[October 5, 2011]

4.) The workers' compensation judge erred in denying a penalty for Venture's denial of the Multaq medication prescribed by Dr. Jeffrey Chen. [May 18, 2011]

5.) The workers' compensation judge erred in denying penalties for Venture's failure to properly pay medical bills from Louisiana Emergency Physician and Lafayette General Medical center for date of service October 18, 2010 sent May 31, 2011.

6.) The workers' compensation judge erred in not awarding a full penalty of $3,000.00 under La. R.S. 23:1201(G) for Venture's failure to properly pay Lafayette General Medical Center bill for dates of service December 30 and 31, 2010.

7.) The workers' compensation judge erred in failing to award a penalty for Venture's denial of the Quest Diagnostics bill for date of service November 18, 2009.

8.) The workers' compensation judge erred in only awarding $6,000.00 in attorney's fees.

## DEFENDANTS' ASSIGNMENTS OF ERROR

Defendants assign the following two assignments of error:

1. Did the Workers' Compensation Court err as a matter of law and fact in awarding a $3,000.00 penalty for failing to pay University Medical Center bills pursuant to a Consent Judgment submitted on May 16, 2011 and signed on May 23, 2011?

2.    In light of the many issues that Plaintiff failed to prove, was the Workers' Compensation Court's award of attorney fees and costs excessive?

## LAW AND ANALYSIS

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review.  In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Foster v. Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784 (citations omitted).

In *Green v. National Oilwell Varco*, 10-1041, p. 3 (La.App. 3 Cir. 4/27/11), 63 So.3d 354, 358 (citations omitted), we explained:

> "The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). This court has held that, in light of that standard of review, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Cent. Lumber Co. v. Duhon*, 03–620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04–315 (La.4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier*, 95–39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61).

Furthermore, a legal error by the WCJ presents a question of law, which is reviewed by determining whether the WCJ's ruling is legally right or wrong. *LeBlanc v. Lafayette Consol. Gov't*, 07-1608 (La.App. 3 Cir. 5/28/08), 983 So.2d 1022.

### Analysis of Mr. Burke's Assignments of Error One, Two, and Three

The WCJ denied Mr. Burke's claims for penalties and attorney fees for Defendants' failure to timely authorize a caudal epidural steroid injection ("ESI") recommended by Dr. Steven K. Staires.  The WCJ further denied Mr. Burke's request for penalties and attorney fees based on his request for aquatic physical

5

therapy, and his request for hinged knee support recommended by Dr. Muldowny. All three claims were denied on the basis that Mr. Burke failed to follow the required procedures provided by La.R.S. 23:1203.1(J). The statute now provides in pertinent part:

> J. After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers' compensation administration medical director on a form promulgated by the director. The medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.

The WCJ in oral reasons for judgment determined that the statute applied and dismissed the claims for failure to timely submit an appeal to the medical director, citing the above pertinent parts of La.R.S. 23:1203.1(J) and concluded, "[i]n this case, this procedure mandated in 23:1203.1 was not followed. Accordingly the court finds the claims are reasonably controverted."

A panel of this court in *Cook v. Family Care Services, Inc.* 13-108 (La.App. 3 Cir.8/28/13), 121 So.3d 1274, upheld the procedure outlined in the statute and also concluded that La.R.S. 23:1203.1 is procedural and not substantive in nature as it does not reduce or limit the medical care to which the claimant was entitled before it was passed.

This court sitting *en banc* in the case of *Romero v. Garan's Inc.*, 13-482 (La.App. 3 Cir. __/__/__), ___ So.3d ___, issued an opinion on December 20, 2013 overruling *Cook.*

6

The majority, in effect, held that in a case already pending before the WCJ, even if the medical dispute occurs after January 1, 2011, no appeal before the medical director need be filed and the new procedure under La.R.S. 23:1203.1 is not applicable. That decision is not final.

In any event, a resolution of that issue, based on the record before this court, is not necessary for a determination of the issue of whether or not penalties and attorney fees are owed for the failure of the Defendants to approve an ESI for Mr. Burke, formally requested by Dr. Staires on December 19, 2011, as there already was a trial on the merits of this claim.

*Caulal Epidural Steroid Injection*

At the hearing on June 27, 2012, Mr. Burke testified that he had not reviewed the medical records surrounding Defendants' initial refusal of an ESI. All he knew was that an ESI had been refused, but he had ultimately received an ESI which had helped relieve his back pain.

Mr. Burke further testified in connection with the request for an ESI that prior to receiving the first injection from Dr. Staires, he was required to undergo an MRI. Mr. Burke was physically unable to undergo an MRI and ultimately underwent a CT scan. After the CT scan was performed, an ESI was approved.

At the hearing, counsel for the Defendants placed into evidence the specific medical records of Dr. Staires relating to the ESI, and correspondence to Dr. Staires in response to his December 19, 2011 formal request for an ESI.

As previously indicated, an ESI was initially mentioned by Dr. Staires in his December 14, 2011 report. The formal request for authorization for an ESI was made by Dr. Staires on December 19, 2011, which resulted in a December 21,

2011 "peer-to-peer" phone call with Dr. Beaty from the Defendant's utilization review team ("u.r.") regarding the requested ESI.

On December 27, 2011, the u.r. team requested additional information. More specifically, the correspondence noted "that the most recent imaging studies submitted for review was performed in 2009, *prior* to the last surgery." (Emphasis added).

On January, 5, 2012, the Defendant's u. r. nurse case manager, Carla Daigle, requested a copy of Dr. Staires' report from December 14, 2011, which was faxed to her as requested. Also on January 5, 2012, Dr. Staires noted the initial denial of the caudal ESI from the u.r. team, but also confirms "through Dr. Muldowny's office that no imaging has been obtained since surgery in 2009."

Dr. Staires also indicates "PLAN In as much as W/C reviewer has denied the recommended ESI at L4, right – on grounds that there is no post-op imaging, will order this now." Dr. Staires then ordered an MRI for Mr. Burke. However, on January 19, 2012, Mr. Burke called Dr. Staires office to report that "he cannot do MRI at LSSH due to his size (he was five feet seven inches and weighed 357 pounds) and because he is claustrophobic. He needed to go to an open air facility." Dr. Staires records reflect that between January 25, 2012 and January 30, 2012, it was determined that due to Mr. Burke's size that an MRI was not possible and a CT scan was the only available option.

Dr. Staires then canceled the order for the MRI and on February 6, 2012, confirmed that Mr. Burke was "scheduled for a Myelogram/CT at Laborde Diagnostic on February 14, 2012." Dr. Staires received the imaging on February 15, 2012, which supported the recommendation "for repeat ESI with caudal

approach as previously recommended." Dr. Staires, in his report from February 28, 2012, again formally requested an ESI.

On March 5, 2012, the u.r. team requested a copy of the "myelogram CT report," which was faxed the same day by Dr. Staires' office. On March 7, 2012, Dr. Staires had another telephone "peer-to-peer review." This time it was with Dr. Ross, another doctor on Defendant's u.r. team, and they "discussed exam findings documenting radiculopathy." The two physicians also discussed the need for aquatic therapy required after the ESI. As a result, on March 8, 2012, both an ESI and aquatic therapy were approved and the ESI scheduled for March 13, 2012, at which time Mr. Burke received the requested ESI.

Plaintiff argues that Defendants cannot rely on a utilization review as a reasonable basis for the initial denial of an ESI formally requested by Dr. Staires on December 19, 2011, to avoid the payment of penalties and attorney fees. Plaintiff cites *Magbee v. Fed. Exp*, 2012-77 (La.App. 3 Cir. 12/12/12), 105 So.2d 1048, in support of this proposition. In *Magbee*, a panel of this court discussed the implications of an employer relying on a utilization review to deny medical benefits and stated:

> In *LeMelle v. Wal–Mart Stores, Inc.,* 04–527, pp. 10–11 (La.9/29/04), 883 So.2d 526, 552–53, this court set out the law pertaining to the award of penalties in instances where the employer has denied recommended treatment based on utilization review:
>
> As stated in *Harrington v. Coastal Construction & Engineering,* 96–681, p. 3 (La.App. 3 Cir. 12/11/96), 685 So.2d 457, 459, *writ denied,* 97–0109 (La.3/7/97), 689 So.2d 1375, "the employer must rely on competent medical advice when the decision to deny the medical treatment is made." The mere production of a different opinion of a doctor who never examined the claimant does not constitute competent medical advice sufficient to reasonably controvert the claim. *Id.; see also Phillips v. Diocese of Lafayette,* 03–1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. While a utilization review process has its place in the workers' compensation process, this court has

> consistently held that a long-distance diagnosis by a physician advisor is not an acceptable basis for denial of treatment and benefits. *See id.*

*Id.* at 1056-7.

Just the opposite occurred here. The record in this case, as discussed above, is clear that Defendants did not rely on the opinion of "a long-distance diagnosis by a physician advisor" in denying Dr. Staires initial December 19, 2011 formal request for an ESI.

Dr. Staires, after an initial telephone discussion with Dr. Beaty, agreed that additional testing on Mr. Burke was medically necessary, as the only testing in the record was done *prior* to his surgery in 2009. After the myelogram/CT testing was completed, Dr. Staires held an additional telephone discussion, this time with Dr. Ross, after which both the ESI and aquatic therapy were timely approved on March 8, 2012. Mr. Burke received the approved ESI on March 13, 2012, some five days later. Accordingly, this court finds that Plaintiff's claims for penalties and attorney fees for Defendants' failure to approve an ESI were reasonably controverted. Thus, Plaintiff's first assignment of error is without merit.

***Aquatic Physical Therapy and Hinged Knee Support***

In this case, the WCJ also found after a full evidentiary hearing that the requested aquatic physical therapy and hinged knee support recommended by Dr. David Muldowny was not accident related, but was the result of an arthritic condition in Mr. Burke's knee. Dr. Muldowny's notes from May 17, 2011, clearly indicate that he did not relate Mr. Burke's knee problems to his accident and noted, "[h]e has some arthritic changes in his knee which would be unrelated to his work-related accident." The WCJ relied on this determination by Dr. Muldowny and properly found these two claims to be reasonably controverted by Defendants. His

findings are reviewable under the manifest error standard and are not clearly wrong. *Foster*, 811 So.2d 1160; *Tomasik v. LA State Veterans Affairs Office*, 13-451 (La.App. 3 Cir. 11/6/13), 124 So.3d 613. Thus, Mr. Burke's assignments of error two and three are without merit.

### *Analysis of Mr. Burke's Assignments of Error Four, Five, Six, and Seven*

We also find that Mr. Burke's assignments of error four, five, six, and seven to be without merit for the reasons set forth in the WCJ's oral reasons for judgment rendered on September 12, 2012, as summarized briefly below.

### *Assignment of Error Four*

Defendant's timely authorized a prescription for Multag prescribed by Dr. Jeffrey Chen on May 18, 2011, pursuant to La.R.S. 23:1201(E), which requires "[m]edical benefits payable under this chapter shall be paid within sixty days after the employer or insurer receives written notice thereof." Defendants received the first written request for the prescription on May 19, 2011, and the Multag was authorized on May 31, 2011, well within the sixty day time period.

### *Assignment of Error Five*

The WCJ correctly found, based on *Evergreen Presbyterian Ministries v. Wallace*, 07-313 (La.App. 3 Cir. 10/10/07), 968 So.2d 256, that Mr. Burke was not the proper party to make a claim for Defendants' failure to prove they paid in full the bill from Lafayette General Medical Center for services rendered on October 18, 2010. Only the doctor or medical provider has the right to controvert the amount of the bill and the amount of the payment.

### *Assignment of Error Six*

The WCJ found Defendants failed to timely pay the Lafayette General Medical Center bills for services rendered on December 30 and 31, 2010, within

11

the sixty day period required by La.R.S. 23:1201(E). Written notice of these bills was received on March 11, 2011, and the bills were paid July 1, 2011, fourteen days after the mandatory sixty day time period within which to pay. The WCJ found, and we agree, that since the due date of the payment was after May 11, 2011, the cutoff date in the Consent Judgment, that these two bills were not included in the Consent Judgment. Though the bills were issued prior to the Consent Judgment, the bills were not due until after the May 11, 2011 cutoff in the Consent Judgment. Since Defendants paid the bills fourteen days after the sixty day due date, the WCJ awarded penalties of $700.00 pursuant to La.R.S. 23:1201(F), failure to pay an amount compensable under the law. As previously stated, Defendants have paid the $700.00 penalty and have not appealed this issue.

Mr. Burke, however does appeal the amount of the $700.00 penalty awarded by the WCJ and seeks an increase of the penalty to $3,000.00 for failure to pay an amount due pursuant to a judgment. We agree with the WCJ's decision to impose the penalty pursuant to La.R.S. 23:1201(F). We find the award of statutory penalties in the amount of $700.00 is not manifestly erroneous. *Green*, 63 So.3d 354; *Foster*, 811 So.2d 1160; *Tomasik*, 124 So.3d 613; *Magbee*, 105 So.2d 1048.

### *Assignment of Error Seven*

The WCJ also correctly found the November 18, 2009 Quest Diagnostic bill for laboratory work was not related to Mr. Burke's work-related accident. The laboratory work was ordered for Mr. Burke's pre-existing diabetic condition. The blood work was ordered by Dr. Dee Dee Luke in response to Mr. Burke's elevated blood sugar level and was properly billed to his private health insurer.

*Analysis of Defendants' Assignment of Error One*

Defendants argue that the WCJ erred as a matter of fact and law in awarding Mr. Burke $3,000.00 in penalties for failure of Defendants to pay three UMC Bills dated October 8, 2009, October 13, 2009, and January 8, 2010, respectively pursuant to La.R.S. 23:1201(G).

The UMC Bills in question were originally sent on April 7, 2010. Defendants received notice of the UMC Bills on November 10, 2010, in response to the interrogatories and request for production of documents propounded to Mr. Burke in connection with his original 1008 Claim. Mr. Burke's responses to discovery were the basis for the agreement of the parties to the May 23, 2011 Consent Judgment.

The WCJ correctly found that the UMC Bills were covered by the May 23, 2011 Consent Judgment between the parties and were included in Mr. Burke's original 1008 Claim. Pursuant to the terms of the Consent Judgment, Defendants paid Mr. Burke, "$8,000.00 in penalties, attorney's fees in amount of $8,000.00, plus expenses in the amount of $469.82 which covers *all penalties and attorney's fees which may have been raised through May 11, 2011*" (emphasis added).

Defendants argued to the WCJ that "plaintiff's claim for penalties and attorney fees were part of the settlement in the prior consent judgment." The WCJ never addressed Defendants' argument that the issue was compromised or settled by the May 23, 2011 Consent Judgment, and thus, subject to *res judicata*.[2] Instead

---

[2] Louisiana Civil Code Article 3080 states, "[a] compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised." Louisiana Revised Statutes 13:4231 defines *res judicata* and its preclusive effects. Louisiana Revised Statutes 13:4231(1) provides, "[i]f the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment."

the WCJ applied La.R.S. 23:1201(G)[3] and awarded the $3,000.00 maximum penalty allowed for failure of Defendants to pay a "final non appealable judgment," within thirty days. The WCJ's award was based on a finding that the UMC Bills for an ultrasound of Mr. Burke's kidneys were "necessary" for surgical clearance by Dr. David Muldowny prior to Mr. Burke's work related lower back surgery.

In briefing to the court, Mr. Burke urges the application of the case of *Morvant v. Shop Rite, Inc.*, 12-956 (La.App. 3 Cir. 3/27/13), 108 So.3d 1287, *writ denied*, 118 So.3d 400, (La. 5/31/13), in seeking multiple penalties of $3,000.00 each pursuant to La.R.S. 23:1201(G) for Defendants' denial of Mr. Burke's claims for reasonable and necessary medical treatment. Alternatively, he argues *Morvant* supports the $3,000.00 penalty and $6,000.00 in attorney fees awarded by the WCJ.

As in this case, the parties in *Morvant* entered into a consent judgment. The defendants agreed to penalties and attorney fees and one additional week of compensation, "which settles all penalties and attorney fees which may have been raised as of August 16, 2010." Mr. Morvant sought penalties and attorney fees for denial of treatment prior to the consent judgment. A panel of this court disregarded defendants' argument that these claims were *res judicata*, and awarded penalties and attorney fees pursuant to La.R.S. 23:1201 (G).

---

[3] Louisiana Revised Statutes 23:1201 (G) provides in pertinent part as quoted by the WCJ in his reasons:

> G. If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees….The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.

14

In *Morvant,* the court found claimant's claims for penalties and attorney fees were not barred by the consent judgment, as it was too "cumbersome" to list "all contemplated medical treatment in a judgment." *Morvant*, 108 So.3d at 1291. In Mr. Burke's case, settlement of the UMC Bills was clearly contemplated by the parties, as the UMC Bills were included in the discovery responses that were a part of the basis of the May 23, 2011 Consent Judgment. We have affirmed the WCJ's ruling that the bill for the knee therapy and hinged knee support were not related and were reasonably controverted. However, the WCJ did also find that the bill for the kidney ultrasound was not paid timely.

While the bills were incurred prior to the Consent Judgment and were subject to the terms of the Consent Judgment, the WCJ found that the UMC Bills, dated October 8 & 13, 2009 and January 8, 2010 in conjunction with the ultrasound of Mr. Burke's kidneys were "reasonable and necessary" and required or ordered by Dr. Muldowny prior to his work-related surgery on Mr. Burke's lower back. Dr. Muldowny's certified medical records, and in particular the Medical Narrative signed and dated by him on December 2, 2009, reflects he had "not reviewed any ultrasound reports (kidney) for surgery clearance." If Dr. Muldowny had ordered or deemed it necessary for Mr. Burke to undergo an ultrasound of his kidneys prior to surgery, he likely would have found it necessary to review the results of the ultrasound testing prior to his performing surgery on Mr. Burke. In effect, defendant is arguing that it has been ordered to pay a penalty for a bill it never owed in the first place. However, if the UMC bill for the ultrasound was included in the consent judgment, then the employer has already conceded that the bills were work-related. Regardless, we must review the WCJ's findings on this issue under the manifest error standard. The WCJ found factually that:

After reviewing the medical on a 10/8/2009 emergency department triage, it states, "Here for US of kidneys. Referred by Dr. David Muldowney." On the 10/8/2009 emergency room record it states, "Here for referral of US kidneys, prior to spinal surgery for Dr. Muldowney." It is clear from the records that this bill was incurred to obtain a surgery clearance. Also, it is clear that these bills were incurred prior to the consent judgment; and by the defendant's own admission, they received written notice in November of 2010.

. . . .

This Court finds the defendant violated the provision of Louisiana Revised Statute 23:1201-G by failing to pay the UMC bill for dates of service October 8 and 13, 2009, and January 8, 2010. Accordingly, the Court awards a Three Thousand Dollar penalty.

We cannot say that his findings are clearly wrong and affirm his ruling on this issue.

### *Analysis of Mr. Burke's and Defendants' Assignments of Error relating to Attorney Fees and Costs*

### *Attorney Fees*

Mr. Burke, in his eighth assignment of error, argues that the WCJ erred in awarding only $6,000.00 in attorney fees, which is less than half the total of $13,475.00 sought by Mr. Burke's attorney for seventy-seven hours of work on this case at an hourly rate of $175.00. In addition, Mr. Burke also seeks an additional award of attorney fees should he prevail on appeal and obtain additional penalties from Defendants.

Defendants, in their second assignment of error, seek a reduction in the $6,000.00 in attorney fees awarded should they prevail in reversing the $3,000.00 award of penalties connected with the failure to pay three UMC Bills. Such an outcome would allow Mr. Burke recovery of only $700.00 in penalties for Defendant's late payment, by fourteen days, of two bills from Lafayette General Medical Center dated December 30 and 31, 2010. Defendants also seek a

reduction in the $1,551.63 amount of costs awarded, based on failure of Mr. Burke to properly document the expenses associated with the hearing.

The WCJ stated in his oral reasons as follows: "[a]ttorney's fees: The Court has considered the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered by the claimant and the amount of time the attorney dedicated to the case. The Court sets a reasonable attorney's fee in the amount of Six Thousand Dollars."

Our supreme court, in *McCarroll v. Airport Shuttle, Inc.*, 00-1123, p. 9 (La. 11/28/00), 773 So.2d 694, 700 (citations omitted), stated:

> In our determination of the respective rights of the employee and the attorney to the statutory attorney fees, a persuasive factor is the methodology used to calculate the amount of the statutory attorney fees. The only limitation on the amount is the reasonableness of the fee awarded by the judge. The amount awarded rests within the discretion of the workers' compensation judge, as long as that amount is supported by the record. Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case.

"Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed." *Williams v. Rush Masonry, Inc.*, 98-2271, pp. 8-9 (La. 6/29/99), 737 So.2d 41, 46 (citation omitted). An appellate court reviews the WCJ's decision to award penalties and attorney fees using the manifest error standard of review. *Ducote v. La. Indus., Inc.*, 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843.

Given our supreme court's directive in *McCarroll*, and this court's ruling affirming the WCJ, we find no abuse of discretion in the WCJ's award of $6,000.00 in statutory attorney fees. Since Mr. Burke did not prevail on any issue he appealed, no additional attorney fees for work done on appeal will be awarded to plaintiff.

*Costs*

Defendants also seek a reduction in the WCJ's award of costs in the amount of $1,551.63. Defendants basically argue that Mr. Burke's failure to prevail on any of his claims, save one, does not warrant the costs awarded. The record reflects that counsel for Defendants objected at the close of the hearing on June 27, 2012, to the failure of counsel for Mr. Burke to itemize and specifically identify the costs for postage, photocopying, mileage and telephone calls. The WCJ allowed counsel for Mr. Burke to "supplement with a breakdown of the expenses," and then made the award of $1,551.63 in the judgment of November 7, 2012. The WCJ obviously considered the arguments of Defendants and concluded that there was enough of a "breakdown of the expenses" to support the award. We find no manifest error and affirm the judgment of the WCJ for costs and expenses.

## DISPOSITION

For the foregoing reasons we affirm the WCJ's ruling. The costs of this appeal are assessed to Robert Burke.

**AFFIRMED.**