STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1000

MICHELLE BUCHANAN

VERSUS

LUBA WORKERS' COMP., ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – Dist. 03
PARISH OF CALCASIEU, NO. 13-02705
CHARLOTTE L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Shannon J. Gremillion, Judges.

AFFIRMED.

Eric J. Waltner
Allen & Gooch
P. O. Box 81129
Lafayette, LA 70598-1129
(337) 291-1400
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Luba Workers' Compensation
    Vitello, Inc.

**Somer G. Brown**
**Cox, Cox, Filo, Camel & Wilson**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Michelle Buchanan**

**GREMILLION, Judge.**

In this workers' compensation case, the workers' compensation judge (WCJ) awarded weekly indemnity benefits, $8,000.00 in penalties, and attorney fees of $12,625.00 to Michelle Buchanan. Her employer, Vitello, Inc. (Vitello), and its workers' compensation insurer, LUBA Workers' Compensation, appeal. For the reasons that follow, we affirm.

## FACTS

On October 22, 2012, Ms. Buchanan was working for Vitello installing some duct work at Kauffman Hall on the campus of McNeese State University in Lake Charles, Louisiana. Her immediate task was wrapping insulation around a ten-inch duct. An anchor suspending the duct failed, and the duct fell a short distance, between two inches and one foot, and struck Ms. Buchanan's shoulder. She claimed that she suffered immediate pain in her shoulder. However, she was able to lift the duct with her left arm and transfer it to her left shoulder, where she rested it until her co-worker, Derrick Brooks, could prop it in place with a sweep broom. The broom's bristles held the section of duct in place.

Mr. Brooks verified Ms. Buchanan's version of the events except the claim by Ms. Buchanan that she experienced immediate pain; she did not complain to him, and he did not see her wince, flinch, or favor her right arm or shoulder thereafter.

After the accident, Ms. Buchanan contacted Mr. Kenny Vitello, Vice-President of Vitello. She knew the importance of notifying one's employer promptly of an accident because her fiancé, Michael St. Germain, had injured himself working for Vitello and had failed to promptly notify the company of his

injury; this, she claimed, caused Mr. St. Germain's claim to be viewed with deep skepticism.

Mr. Vitello and his brother, Keith, the company president, drove to the job site to check on Ms. Buchanan's condition. Both Vitellos testified that Ms. Buchanan reassured them that she was not injured. Ms. Buchanan refused medical treatment. Ms. Buchanan testified at trial that the Vitellos told her that she was an independent contractor and did not qualify for workers' compensation benefits. The Vitellos deny this.

The work at McNeese was completed on October 25, 2012. Because its job was completed, Vitello laid off its workers, including Ms. Buchanan, who continued to work until the job was finished. Vitello had no further contact with Ms. Buchanan until it received a February 7, 2013 letter from her attorney advising of her workers' compensation claim.

Apparently, no health care provider had heard from Ms. Buchanan during that time, either. Her first medical treatment for any problems related to this incident was her appointment with Dr. Clark Gunderson, a Lake Charles orthopedic surgeon, on February 13, 2013. Ms. Buchanan explained that, because she had been told by the Vitellos that her injury was not compensable, she could not seek medical attention because of concerns about cost. Dr. Gunderson found tenderness over Ms. Buchanan's lower neck and right shoulder muscles. She reported that she was experiencing radiating pain, tingling, and numbness down her right arm into her hand. Dr. Gunderson also found decreased range of motion in the neck and decreased muscle strength in the right arm. He opined that Ms. Buchanan had sustained a cervical herniated disc and possibly a rotator-cuff tear as a result of this accident. This was confirmed by an MRI taken in February 2013.

Ms. Buchanan indicated to Dr. Gunderson that she had never experienced any previous neck injury. She had undergone a right-shoulder rotator-cuff repair in 2007, and related that information to Dr. Gunderson.

The WCJ appointed Dr. W. Stan Foster, a Lafayette orthopedic surgeon, to act as independent medical examiner. Dr. Foster examined Ms. Buchanan on February 6, 2014. Dr. Foster opined that Ms. Buchanan sustained a contusion to her right shoulder. He agreed, though, that if Ms. Buchanan had reacted to the fall of the duct with a flinch or sudden movement, she could have reinjured her shoulder. He could not opine to any degree of medical probability or medical certainty that Ms. Buchanan was not injured in the incident.

Ms. Buchanan was also seen by Dr. Douglas Bernard, a New Iberia orthopedic surgeon, who opined that the incident did not cause or make worse Ms. Buchanan's shoulder injury.

At trial, Vitello presented the testimony of Dr. Gerald S. George, who holds a Ph.D. in biomechanics from Lafayette. Dr. George testified that he inspected the scene of the accident and weighed the duct that fell on Ms. Buchanan. He removed the anchor that replaced the one that broke in the incident. The duct dropped no more than a foot with that anchor removed. Based upon the measurement of the duct and the height of Ms. Buchanan on the scaffold, the duct fell at most three inches onto Ms. Buchanan's shoulder. The duct weighs 2.66 pounds per foot. The resulting force of the duct falling on Ms. Buchanan's shoulder was calculated by Dr. George to be 3.77 foot-pounds, which is equivalent to a person's arm loosely falling on her shoulder from the same distance. The force, further, would have been attenuated by the insulation Ms. Buchanan had wrapped the pipe with. More

probably than not, according to Dr. George, such force was insufficient to cause injury to the shoulder or neck.

After the close of evidence, the WCJ pronounced oral reasons for judgment. The WCJ found that Ms. Buchanan had been injured in the incident. Citing *Johnson v. NATCO*, 94-1236 (La.App. 3 Cir. 3/1/95), 651 So.2d 494, the WCJ accorded more weight to Dr. Gunderson's opinion than that of the other examiners. The WCJ found that the incident exacerbated Ms. Buchanan's pre-existing shoulder injury and that she was in need of further treatment. Ms. Buchanan was awarded weekly indemnity benefits of $238.33; a penalty of $2,000.00 for Vitello's failure to pay weekly indemnity benefits; a $2,000.00 penalty for failure to pay medical benefits; a $2,000.00 penalty for failure to authorize physical therapy; a $2,000.00 penalty for failure to pay pharmacy bills; and attorney fees of $12,625.00. Vitello and LUBA appealed.

## ASSIGNMENTS OF ERROR

The Appellants argue that the WCJ erred in finding that an injury occurred and that the incident in question was causally related to the injury, that the WCJ erred in not finding that Ms. Buchanan committed fraud in pursuit of her claim for compensation, and that the WCJ erred in awarding Ms. Buchanan penalties and attorney fees.

## ANALYSIS

A WCJ's factual findings and reasonable credibility evaluations are reviewed under the manifest error standard. *Burke v. Venture Transp. Logistics, LLC*, 13-753 (La.App. 3 Cir. 1/22/14), 131 So.3d 530. This requires that we determine whether the WCJ's findings and conclusions were reasonably supported by the record. *Id.*

Vitello argues that none of the experts opined that the falling duct generated sufficient force to cause injury. This is true. However, Dr. Gunderson opined that the incident and Ms. Buchanan's reaction to it, more probably than not, could have caused it, given her history of a previous shoulder injury. Dr. Foster could not rule this out as a cause, either. The relative weight the WCJ gave to their testimonies is reasonably supported by the record.

Louisiana Revised Statutes 23:1208 makes it unlawful for a person to willfully make a false statement or representation for the purpose of obtaining or defeating a claim for workers' compensation benefits. In addition to imposing forfeiture of benefits, La.R.S. 23:1208 imposes criminal sanctions, the severity of which is determined by the amount of benefits claimed or obtained. The employer bears the burden of proving a violation of the statute. *Rogel v. Dollar Gen. Corp.*, 13-792 (La.App. 3 Cir. 12/11/13), 132 So.3d 978, *writ denied*, 14-58 (La. 3/14/14), 135 So.3d 604. Inadvertent or inconsequential statements do not result in forfeiture of benefits. *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7.

Specifically, Vitello cites Ms. Buchanan's denials to Drs. Gunderson and Foster that she had previously sustained a neck injury. Further, Ms. Buchanan "feigned no record of a cervical MRI and refused to acknowledge a document completed for the MRI facility that reported neck pain."

Dr. Gunderson was questioned about Ms. Buchanan's cervical complaints. He testified that shoulder complaints often cause pain into the neck. Further, Dr. John Noble, a Lake Charles orthopedic surgeon, performed Ms. Buchanan's rotator cuff surgery in 2007. Dr. Noble conducted a Spurling's Test on Ms. Buchanan, which produced positive findings. This test attempts to isolate cervical disc

5

problems. Accordingly, Dr. Noble ordered an MRI at that time. This test revealed that Ms. Buchanan had several mildly bulging discs in her neck, but no focal disc protrusion, which Dr. Noble testified was significant, because it revealed no conditions necessitating surgery. Dr. Noble testified, "We probably would have said, ['] Look, you've got a little bit of wear and tear, but you do not appear to have a surgical problem.[']" Since the purpose of this testing was to isolate those problems related to Ms. Buchanan's shoulder complaints and rule out those possibly related to her neck, Dr. Noble's interpretation of the MRI and his expression of that interpretation to Ms. Buchanan could very well have led Ms. Buchanan to the conclusion that her neck was not the source of her problems. In no way did it convey any grave concerns regarding Ms. Buchanan's neck. In Dr. Noble's opinion, his treatment of Ms. Buchanan was related to her shoulder.

Louisiana Revised Statutes 23:1201 governs the award of penalties and attorney fees in workers' compensation cases. Failure to provide payment of compensation benefits or to approve treatment "shall" result in a penalty. The statute provides that the penalty "shall not apply if the claim is reasonably controverted." La.R.S. 23:1201(F)(2). The employer bears the burden of reasonably controverting the claim. *Ewing v. Hilburn*, 11-1243 (La.App. 3 Cir. 3/7/12), 88 So.3d 640. To avoid penalties and attorney fees, the employer must prove that the claim was reasonably controverted throughout the period during which benefits were denied. *Id.*

The WCJ found Ms. Buchanan's testimony credible. That credibility determination accounted in no small part for the WCJ's award of penalties and attorney fees. A WCJ's credibility determination is warranted great deference

under the manifest error standard. *Babineaux v. LUBA*, 12-129 (La.App. 3 Cir. 6/6/12), 91 So.3d 1270. As our supreme court has held:

> Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Rosell v. ESCO*, 549 So.2d 840, 844-45 (La. 1989)(citations omitted). We do not find that such inconsistencies are present. Certainly, Ms. Buchanan's procrastination in seeking medical treatment could cast doubt on her complaints. The fact that she, by virtue of her vicarious experience in Mr. St. Germain's workers' compensation claim, meticulously documented the accident scene and immediately contacted the Vitellos might cause one to wonder whether her claim was pretextual. But, in many the case, the lack of documentation raises a question about whether an incident actually occurred.

Coupled with the medical opinion of Dr. Gunderson, the objective evidence of injury contained in the February 2013 MRI, and the opinion of the court-appointed independent medical examiner, Dr. Foster, that Ms. Buchanan was not at maximum medical improvement, the credibility determination by the WCJ renders the decision to award penalties unassailable.

## CONCLUSION

The findings by the WCJ in this matter are all reviewed under the manifest error standard. The record, viewed in its entirety, demonstrates no manifest error in the WCJ's findings. The judgment in favor of Appellee, Michelle Buchanan and against Appellants, Vitello, Inc., and its workers' compensation insurer, LUBA

Workers' Compensation, is affirmed. All costs of this appeal are taxed to Appellants.

**AFFIRMED.**